### The State of Indiana, ex rel. Gleason, *v.* Gerdink.

[No. 21,438. Filed December 10, 1909.]

1. Constitutional Law.—*Courts.—Creation of.*—Under article 7, §1, of the Constitution, vesting the judicial power of the State "in a Supreme Court, in circuit courts, and in such other courts as the General Assembly may establish," the legislature had the power to create the Superior Court of Vigo County and to define its jurisdiction. p. 246.

2. Action.— *Civil.— Quo Warranto.—Jurisdiction.*—The action of *quo warranto* for the recovery of the possession of an office, being for the enforcement or protection of a private right, is a civil action; and the Superior Court of Vigo County has jurisdiction of a case thereof. p. 247.

3. Constitutional Law.—*Officers.—Judges.—Vacancies in Office.— Power of Appointment.*—Under article 5, §18, of the Constitution, providing that the Governor shall fill any vacancy that may occur "in the office of judge of any court," and §8845 Burns 1908, Acts 1905 p. 219, §218, empowering the mayor to fill vacancies in the office of city judge, the Governor has no right to fill the vacancy in the office of judge of a municipal court, the constitutional provision referring only to state courts. p. 247.

4. Justices of the Peace.—*Powers.—Constitutional Law.*—Justices of the peace are recognized by the Constitution as township officers, but not as vested with judicial powers. p. 248.

5. Constitutional Law.—*Municipal Offices.*—The legislature may create all municipal offices that it deems necessary, and may provide the method of the appointment or election of their officers. p. 249.

6. Constitutional Law.— *Construction.— Custom.*— The uniform practice, custom and course of legislation under a constitutional provision, as well as the failure of the people to amend it, may be considered in construing such provision. p. 250.

From Superior Court of Vigo County; *John E. Cox,* Judge.

Action by The State of Indiana, on the relation of William T. Gleason, against John W. Gerdink. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*J. T. Walker* and *O. D. Davis,* for appellant.

*McNutt, McNutt & Wallace, F. S. Rawley, Lamb, Beasley & Sawyer, Louis Leveque* and *Foley & Royse,* for appellee.

HADLEY, C. J.—This is a proceeding in *quo warranto* to contest with appellee the right to the office of city judge for the city of Terre Haute.

To fill the vacancy occasioned by the resignation of the incumbent of the office, the mayor of the city, acting under section 218 of the cities and towns act of 1905 (Acts 1905, p. 219, §8845 Burns 1908), appointed appellee to fill said vacancy, and the Governor, assuming to act under constitutional powers, appointed the relator to the same vacancy. Both appointees proceeded to qualify under their respective appointments, and appellee, having taken possession of the office, and all books, papers and property belonging thereto, and having entered upon a discharge of the duties thereof, this action was instituted by the relator to oust him therefrom. Two questions arise in the case: (1) Has the superior court jurisdiction of the action? (2) Is §8845, *supra,* in conflict with article 5, §18, of the state Constitution?

"The judicial power of the State shall be vested in a Supreme Court, in circuit courts, and in such other courts as the General Assembly may establish." Const., Art. 7, §1. The legislature had power to establish the Superior Court of Vigo County, and to define its jurisdiction. *Sauer* v. *Twining* (1882), 81 Ind. 366. The jurisdiction of that court is defined in the act creating it (Acts 1881, p. 93), as follows: "Said court, within and for said county, shall have original and concurrent jurisdiction with

the circuit court in all civil cases, and jurisdiction concurrent with the circuit court in all cases of appeal from justices of the peace, boards of county commissioners, and mayors or city courts in civil cases, and all other appellate jurisdiction in civil causes now vested in, or which may hereafter be vested by law in the circuit courts; and said court shall also have concurrent jurisdiction in all actions by or against executors, guardians, or administrators: Provided, however, that said superior court hereby constituted, shall not have jurisdiction in matters of probate or the settlement of decedents estates, but the same shall be and remain within the jurisdiction of the circuit court as now provided by law.''

The civil code provides that ''there shall be but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be denominated a civil action.'' §249 Burns 1908, §249 R. S. 1881. An information in the nature of *quo warranto* to recover possession of an office against an intruder is an action for the enforcement or protection of a private right, and hence a civil action. *Robertson* v. *State, ex rel.* (1887), 109 Ind. 79, 86. It is certain that *quo warranto*, in modern jurisprudence, whatever it may have been originally, is not a criminal action, and we see no reason for doubting the jurisdiction of the superior court in this case. *Hockemeyer* v. *Thompson* (1898), 150 Ind. 176.

Section 8845, *supra*, provides that ''in case of a vacancy in the office of city judge, the mayor shall appoint a successor, who shall hold such office during the unexpired term.'' Article 5, §18, of the Constitution, provides, among other things, that the Governor shall, by appointment, fill any vacancy that may occur ''in the office of judge of any court; * * * which shall expire when a successor shall have been elected and qualified.'' The real question under the second proposition, then, may be stated thus: Does the constitutional phrase, ''judge of any court,''

embrace a judge of a city or municipal court? Or, in other words, does it embrace any other than the presiding officer of a court, having the dignity of a state court?

At the time of the adoption of the Constitution, the Supreme Court and the circuit courts were all the courts that existed in the State that were recognized as such. We had the courts of the justices of the peace at that time, and have had them since the organization of the State, but there is every reason for believing that the framers of the Constitution did not regard them as belonging to the same class with the Supreme Court, circuit courts, and "such other courts as the General Assembly may establish" (Const., Art. 7, §1); that is, courts that the legislature might create of like dignity and of a general and state character, similar to the circuit courts, such as the courts of common pleas, criminal and superior courts, and as contradistinguished from inferior tribunals of a local character, and that it was not meant to include justices of the peace, or any other inferior officer or body endowed with judicial power for local purposes, as courts within the meaning of the phrase "judge of any court," contained in article 5, §18, of the Constitution. See reasoning in the case of *Baltimore, etc., R. Co.* v. *Town of Whiting* (1903), 161 Ind. 228.

This is plainly indicated by divers provisions of the Constitution. Justices of the peace were recognized as township officers, but not as vested with judicial powers, and it was provided (Const., Art. 7, §14) that a sufficient number shall be elected by the voters of each township, "and their powers and duties shall be prescribed by law."

The legislative right to create and empower whatever county, township and municipal officers may be deemed expedient is also clearly apparent. It is declared that "such other county and township officers as may be necessary shall be elected or appointed in such manner as may be prescribed by law" (Const., Art. 6, §3); that "all county, township,

and town officers shall reside within their respective counties, townships, and towns; and shall keep their respective offices at such places therein, and perform such duties as may be directed by law'' (Const., Art. 6, §6); and that ''vacancies in county, township, and town offices shall be filled in such manner as may be prescribed by law'' (Const., Art. 6, §9). The word ''town,'' as used in the section last quoted, is generic, and includes cities. *City of Indianapolis* v. *Higgins* (1895), 141 Ind. 1.

It will thus be observed that there is constitutional warrant to create any kind of an office—judicial, executive or administrative—in the smaller governmental divisions that the legislature may deem necessary to the proper administration of local affairs, and that vacancies in such offices may be filled in such manner as the legislature prescribes. This comes near deciding our question. Under these provisions of the Constitution we have justices of the peace, county commissioners, mayors, town clerks, and city judges vested with judicial powers by the General Assembly, and, when exercising such powers, do so in the character of a judge of a court of more or less magnitude.

It will hardly be contended that the constitutional body intended, by article 5, §18, of the Constitution, to impose upon the Governor the onerous and inappropriate duty of making appointments to fill vacancies occurring in all these offices. If not in all, why in any? What greater reason is there for holding that he shall fill vacancies in one, and not in the others?

It is not claimed to be the duty of the Governor to appoint to vacancies in any of these offices, save that of city judge, and appellant has failed to call our attention to any precedent in this State for such an appointment.

In the case of *State, ex rel.,* v. *Berghoff* (1902), 158 Ind. 349, the statute creating the office of city judge provided that the vacancy should be filled by the Governor, which made it undoubtedly competent for the Governor to appoint ''in the

manner prescribed by law,'' not in virtue of article 7, §1, of the Constitution. If there should be doubt as to this question, we may have recourse to the practical construction placed upon these provisions of the Constitution by a long and substantially uniform course of legislation.

The legislature, from the adoption of the new Constitution to the present time, has uniformly asserted the authority and right to designate the agency that should fill all 6. vacancies in the office of city or municipal judge, and this has been acquiesced in by the other departments of the state government. As early as 1857 (Acts 1857, p. 42, §17) it provided that ''vacancies in the office of mayor, city judge * * * occurring in any manner, shall be filled by special election.'' The same provision was reënacted in 1859 (Acts 1859, p. 207, §3), and like provisions were enacted in 1865 (Acts 1865 [s. s.], p. 3, §18), and in 1867 (Acts 1867, p. 33, §18).

In 1891 (Acts 1891, p. 195, §123, §3894 Burns 1901) it was provided that ''in case of a vacancy in the office of police judge, the mayor shall appoint a successor, who shall hold such office during the unexpired term of his predecessor.'' The same provision was reënacted in 1893 (Acts 1893, p. 65, §4, §3908 Burns 1901), and in 1899 (Acts 1899, p. 270, §4, §4190d Burns 1901).

In 1901 (Acts 1901, p. 132, §3, §4100 Burns 1901) it was enacted that ''in the case of a vacancy in the office of the municipal judge, the Governor of the State of Indiana shall fill such vacancy by appointment,'' which act is the basis of the opinion in the case of *State, ex rel., v. Berghoff, supra.* Again, we read in the act of 1901 (Acts 1901, p. 198, §55, §4190w7 Burns 1901): ''In case of vacancy in the office of city judge, the mayor shall appoint a successor who shall hold such office until the next city election.'' At the same session, in another act relating to cities of another class (Acts 1901, p. 132, §3, §4100 Burns 1901), it was again pro-

vided that the Governor should fill any vacancy in the office of municipal judge. In 1905 (Acts 1905, p. 219, §218, §8845 Burns 1908) the right of the mayor to appoint was again reaffirmed.

It thus appears that for fifty years the legislature, without a single exception, has been claiming and asserting its constitutional authority to provide by law for the filling of all vacancies that arise in the office of a judge of a city court as well as of all other elective officers of counties, townships, cities and towns. Since this construction was adopted and during its long continuance there have been divers amendments by the people to the Constitution in other respects, but there has been no dissatisfaction expressed, nor effort made to amend in this particular.

With respect to this subject we said in the case of *Hovey* v. *State, ex rel.,* (1889), 119 Ind. 386, 388: ''We are far from asserting that the plain provisions of the Constitution may be broken down or overleaped by practical exposition, but what we do assert is, that where, as here, there are provisions not entirely clear and free from doubt, practical exposition is of controlling force. Our own and other courts have time and time again adjudged that practical exposition is of controlling influence wherever there is need of interpretation. The language employed by the courts is strong, and the current of opinion is unbroken. In speaking of the effect of a practical exposition, it was said by an able court that: 'It has always been regarded by the courts as equivalent to a positive law.' *Bruce* v. *Schuyler* [1847], 4 Gilm. 221. In adhering to long-continued exposition, another court said: 'We cannot shake a principle which in practice has so long and so extensively prevailed.' *Rogers* v. *Goodwin* [1807], 2 Mass. 475.'' See further, *French* v. *State, ex rel.* (1894), 141 Ind. 618, 628, 29 L. R. A. 113; *State* v. *Gerhardt* (1896), 145 Ind. 439, 33 L. R. A. 313; *Arnett* v. *State, ex rel.* (1907), 168 Ind. 180, 8 L. R. A. (N.

S.) 1192; *City of Terre Haute* v. *Evansville, etc., R. Co.* (1897), 149 Ind. 174, 37 L. R. A. 189.

We conclude that §8845, *supra,* is not repugnant to the Constitution, and the judgment should therefore be affirmed.

Judgment affirmed.