LARSEN et al. v. SALT LAKE CITY, et al.

No. 2529.   Decided May 1, 1914 (141 Pac. 98).

1. MUNICIPAL CORPORATIONS — CONSTITUTIONAL LAW — COMMISSION FORM OF GOVERNMENT—VALIDITY. Laws 1911, abolishing the offices of mayor and city council in cities of the first and second class, and creating a board of commissioners to govern and control such cities, is not void because the commission form of municipal government infringes upon the constitutional form of government. (Page 444.)

2. INNKEEPERS—POWER OF MUNICIPALITY TO REGULATE AND LICENSE. Authority to regulate and license rooming houses and hotels is expressly conferred upon the city council or board of commissioners by Laws 1911, chap. 120, sections 206x4, 206x38. (Page 444.)

.3. EVIDENCE—PRESUMPTIONS—OFFICIAL PROCEEDINGS—LICENSES—ACTION TO COMPEL ISSUANCE. An action to compel a city board of commissioners to issue a rooming house license, under an ordinance permitting them to refuse to do so for good cause, was properly dismissed, where the plaintiffs failed to show that the board refused the license for insufficient reasons; the presumption being that there was good cause therefor. (Page 445.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action by Alma C. Larsen and another against Salt Lake City and others.

Judgment for defendants. Plaintiffs appeal.

AFFIRMED.

*Geo. W. Moyer* and *S. P. Armstrong* for appellants.

*H. J. Dininny, Aaron Meyers* and *W. H. Folland* for respondents.

APPELLANT'S POINTS.

Legislative, executive and judicial departments apply to municipalities. (*State v. Smith,* 15 Mo. App. 412.) An ordinance has the same force within a municipality as a statute. (*Eureka v. Wilson,* 15 Utah, 53; *Stockdale v. Ry.,* 28 Utah, 201; *Ry. v. Interstate Commerce Commission,* 162, U. S., 197.) The municipality acts in a dual capacity, that is, in its governmental character it is the agent of the State, but as to its private property it acts for itself. (*New Orleans v. New Orleans Water Works Co.,* 142 U. S. 79; *Attorney-General v. Detroit,* 112 Mich., 145, 37 L. R. A.

211; *Commissioners v. Albany Co.,* 92 U. S. 307; 1 Dillon
Mun. Corp., Section 31, 5th Ed.; *Lloyd v. Mayor,* 55 Am.
Dec. 347; 28 Cyc. 121, 124; *Springville v. Johnson,* 10
Utah, 357; *Mayor v. Baltimore,* 63 Am. Rep., 692; *Scott
v. La Porte,* 162 Ind. 34; *Bryne v. Railway,* 169 Ill. 75;
*Johnson v. San Diego,* 109 Cal., 468; *State v. Lawrence,*
79 Kan. 234, 28 Cyc. 117, 121.) A municipal corporation
can exercise those powers granted to it by its charter or the
legislature, and as it is permitted to exercise the powers
which its charter authorizes so it is prohibited from exer-
cising those which are not authorized. Any act or attempted
exercise of power which transcends the limits expressed or
necessarily inferred from the language of the charter or
legislative authority by which its power is conferred is be-
yond the authority of the municipal corporation and is
therefore null and void. (Dillon on Mun. Corp. Sec. 89
and 55; *Cooke v. McCrea,* 93 Ill. 236; *McCann v. Auto Co.,*
9 Neb. 324; *Summerville v. Dickerman,* 127 Mass. 272;
*Bryan v. Page,* 51 Tex. 532; *Butler v. Nevin,* 88 Ill. 575.)

The right of a municipal corporation to require a license
for conducting any business of a questionable character,
reposes in the municipal authorities a discretion to grant
or refuse the license depending upon the character, qualifi-
cations and good faith of the applicant. (3 McQuillan,
Municipal Corp., p. 2238; *People v. Jenkins,* 125 N. Y. S.
817; 140 App. Div., 786; *People ex rel v. Grant,* 126 N. Y.,
473; 27 N. E., 964; *St. Paul v. Troyer,* 3 Minn., 291;
*Buffalo v. Hill,* 79 N. Y. S., 449.) Power given by the legis-
lature to a municipality to regulate and license any occupa-
tion, includes power to refuse a license even where the stat-
utory or preliminary requirements are complied with. (3
McQuillan, Municipal Corp., p. 2236; 25 Cyc. 603; *St.
Paul v. Troyer,* 3 Minn., 291; *People v. Grant,* 126 New
York, 473; *Chilvers v. People,* 11 Mich., 43.) Regulation
of rooming houses is a proper exercise of police power.

*Com. v. Muir,* 38 Weekly Notes of Cases, 1896, (Pa.) p. 328; *Lord v. Jones,* (Me.) 41 Am. Dec., 391; 24 Me. 439; *Russelville v. White,* 41 Ark., 485; *City of Chicago v. M. & M. Hotel Co.,* 248 Ill. 264; 93 N. E., 753; *Helena v. Miller,* 114 S. W., 237.) The licensing authority may refer the application to another body or officer and so long as it retains the power to decide whether or not a license should issue, it is not a delegation of the licensing power. (*In re Bickerstaff,* 70 Cal. 35; 11 Pac. 393; *Chicago v. Drago-sawacz,* 256 Ill., 34; 99 N. E., 869; *Grundling v. Chicago,* 52 N. E., 44-46; 177 U. S. 183.) The right to grant or refuse a license implies the power to do so unconditionally, and that a refusal or revocation of a license might be done without notice and without a hearing. (*McKenzie v. Mc-Clellan,* 116 N. Y. Supp., 645; *Wiggins v. Chicago,* 68 Ill., 372; *Child v. Bemis,* (R. I.), 12 L. R. A., 57.)

STRAUP, J.

The substance of the complaint is: The plaintiffs are proprietors of a rooming house of 114 rooms known as the St. Cecile Hotel, in Salt Lake City, in which they have invested $16,000. As alleged, they conducted the business "in a proper, orderly, and lawful manner." Two ordinances of the city are alleged, one passed in December, 1903, by the then mayor and city council, by which a license fee of fifty dollars is provided for a rooming house of forty rooms or over, the other passed by the board of commissioners of the city in July, 1912, which provides for a license fee of $200 for hotels and rooming houses of one hundred rooms or over. It is alleged the latter is invalid, and that the prior is still in force. On December 30, 1912. the plaintiffs applied to the board of commissioners for a license from January 1, 1913, to January 1, 1914. The board referred the application to the chief of police, who reported that he had inspected plaintiff's rooming house and recommended that the license be not granted. The board thereupon notified plaintiffs to appear before it "and show cause why their license should be granted." At the

appointed time the plaintiffs appeared, "and said board proceeded to a pretended and mock hearing of said matter," and that "at said pretended hearing the board violated almost all rules of evidence, denied the plaintiffs' right by cross-examination or otherwise to test the credibility of witnesses testifying against them, and refused to hear or consider pertinent and relevant evidence, and admitted incompetent and hearsay evidence against them, all in keeping with their predisposed intent and fixed purpose to deny them said license." Other charges are made that at the hearing some of the commissioners held "whispered conversations with the complaining witness, a detective of the city and confidential agent of the chief of police," and that the detective, without the consent or knowledge of the plaintiffs, caused and induced women of ill repute to procure lodging in the plaintiffs' rooming house, employed men of low character and ill repute to visit the house, and "to commit violations of the law" therein, and then caused the arrest of the plaintiffs, and that the detective personally visited the house and attempted "by various arts, means, and devices to induce plaintiffs' servants to violate the law and commit crimes therein, and conspired with women of ill repute and immoral men to enter plaintiffs' hotel" for immoral purposes, and by such means, and by circulating ill reports, attempted to injure the good name of the plaintiffs' house. It is further alleged that the board, "without any legal investigation of the facts or knowledge of the facts," and "arbitrarily, unlawfully, and capriciously, refused to grant plaintiffs a license, and that, unless restrained, the commissioners and chief of police under the direction of the board will arrest the plaintiffs in the conduct of their business, and will greatly annoy and harrass them," to their great and irreparable loss and damage.

The prayer is: (1) That the order of the commissioners denying the plaintiffs a license be annulled and vacated; (2) that the ordinance requiring the payment of a $200 fee for a license be declared void; (3) that, pending a hearing of the matters presented by the complaint, the board

be required to issue plaintiffs a license, subject to the final disposition of the case, and that in the meantime the com-missioners and the chief of police be restrained from in any manner interfering with the plaintiffs' rooming house business "on the claim that they are conducting a rooming house business without license"; and (4) for general relief.

We have thus set forth the substance of the complaint, for it is somewhat difficult to ascertain its exact character, whether a complaint or petition for a writ of mandate, certiorari, or, as denominated by counsel, a complaint or bill in equity.

Upon this complaint the court, on plaintiffs' application, granted a temporary restraining order and directed the commissioners, upon payment of fifty dollars, to grant the plaintiffs a license, subject, however, to the final disposition of the case. The order was complied with, and such a license granted, and the commissioners and chief of police, pending the action, restrained from interfering with the plaintiffs' business upon the ground or claim that they were conducting the business without a license.

The city and the commissioners, answering, pleaded the ordinance of 1912, under which they claim power and authority to grant and refuse licenses, and averred that when the plaintiffs filed their application for a license—

"the application was, as required by said ordinance, duly referred to the chief of police of Salt Lake City, who thereafter reported that plaintiffs' place had been inspected and recommended that a license be not granted; that thereupon said plaintiffs were notified to appear before said board to show cause why their application should be granted, which the plaintiffs did, both in person and by their attorney; that a hearing was duly had upon the question of whether or not a license should issue, at which hearing evidence was introduced and admissions made by plaintiffs, from which evidence and admissions said board held and decided that such application for a license should be denied; that such hearing was within the power of such board as conferred upon it by law and said decision was based upon

the evidence and admissions aforesaid, and was neither arbitrary or unlawful or capricious."

The matter came on for hearing before the court. The plaintiffs were unprepared to go to trial on the ground, as asserted by their counsel, of the serious illness of one of the plaintiffs who personally conducted the business, and who, and not the other plaintiff, was cognizant of the facts. To avoid a continuance, counsel for the defendants stated that a written statement by plaintiffs' counsel would be accepted as the testimony of the absent plaintiff. Such a statement was prepared and submitted. Defendants' counsel then admitted that the plaintiff, if present, would so testify, and consented that the statement be received in lieu of his testimony, subject otherwise, to objections as to competency, relevancy, and materiality. The plaintiffs offered the statement in evidence. Portions of it were received, and portions, on defendants' objections, excluded. The plaintiffs adduced no other evidence and rested. The court thereupon, on the defendants' motion, granted a nonsuit. In ruling upon it, the court observed:

"The plaintiff has probably shown that he comes within the class of persons that are entitled to a license; that is to say, if the court were sitting as a board for the hearing of applications for license, he has probably shown that he has made proper application, and is willing to pay the fee, and is not disqualified from having a license. But he has not shown, or attempted to show, that the exercise of discretion of the board of commissioners was exercised arbitrarily, or without evidence, or that they abused their discretion in any respect. The motion for nonsuit will be granted."

Pending the appeal the court, on plaintiffs' application, continued in force the restraining order and the license theretofore issued upon the condition that the plaintiffs pay the additional sum of $150.

The plaintiffs appealed. It is contended the ordinance under which they were required to pay a license fee of $200 is invalid. This on the ground that the act itself (Laws

1911), abolishing the offices of mayor and city council of cities of the first and second class, and creating a board of commissioners to govern and control such cities, is void, for the reason that the commission form or plan of municipal government infringes upon our constitutional form of government. We think the contention untenable. Little need be said as to this, for in about every instance where similar statutes providing for a commission plan or form of government have been before the courts, and the validity of them assailed on this and other grounds, they have been quite uniformly upheld. *State ex rel. Hunt v. Tausick,* 64 Wash. 69, 116 Pac. 651, 35 L. R. A. (N. S.) 802, and note.

It is further contended that no sufficient authority was conferred upon the board to regulate and license rooming houses and hotels, etc. Such power is expressly conferred. Sections 206x4, 206x38, chap. 120, Laws 1911. It also is contended that the ordinance is bad because it requires applications for a license to be referred to the chief of police for his investigation, report, and recommendation, and provides that "upon the receipt of such application and report from the chief of police said board shall act on such application in regard to granting or denying the same as it shall seem just and proper." By this, it is claimed, the commissioners with respect to granting and refusing licenses have, without authority, delegated a power and function to the chief of police which the statute has conferred and imposed upon the board. We need not inquire into that, for it is neither alleged nor proved that the plaintiffs were denied a license because of the report or recommendation of the chief of police. It is alleged that plaintiffs' application was referred to the chief of police, and that he recommended that it be not granted. But it also is alleged that the plaintiffs were then notified to appear before the board, and that "a pretended hearing" was had, and as the result thereof the board denied the license. The evidence and the nature of that hearing will presently be noticed. It also is contended the ordinance is bad for

the reason that it permits and requires the chief of police, in making investigations and inspectons of hotels and rooming houses, to unreasonably and unduly interfere with the rights of those engaged in such business. That likewise is not involved.

Further complaint is made of the court's rulings refusing to admit in evidence portions of the statement heretofore referred to. This will be considered in connection with the ruling granting the nonsuit, of which complaint is also made. Though all the portions of the statement **3** excluded had been admitted, yet, in our opinion, no *prima facie* case was made by the plaintiffs. No matter what name may be given the plaintiffs' action—mandate, *certiorari,* or equity—still the gravamen of it is that the board, without sufficient or just cause, refused them a license, which ruling or order they, by this action, seek to have annulled, and to direct the board to grant them a license either under the ordinance of 1903 or 1912. The latter, in so far as it is here involved, is valid. Whether it is otherwise invalid, we need not consider or decide. Under it the plaintiffs were required to seek and obtain a license to do a rooming house or hotel business. The commissioners were not authorized to arbitrarily or capriciously deny the license. Nor could they merely within their discretion deny it. They can refuse an applicant a license only for good cause. The plaintiffs alleged that the board, without cause, and arbitrarily and capriciously, denied it. That was denied. As indicated by the trial court, they adduced no evidence to sustain the allegation. No evidence whatever was adduced as to the nature or character of the hearing or the proceedings had before the board, or as to the evidence adduced before it or excluded by it, nor as to the grounds upon which or causes for which plaintiffs' application for a license was denied. As to that no evidence whatever was adduced. Nor did the portions of the statement excluded in any particular relate to any such subject or subjects. So the plaintiffs did not show nor did they offer to show, anything to indicate that the board for insufficient reasons or

grounds refused plaintiffs a license. And in the absence of such a showing, the presumption must be indulged that the commissioners for good cause, and for sufficient reasons, denied their application. We therefore think the nonsuit was properly granted, and the action properly dismissed. The judgment is therefore affirmed, with costs.

McCARTY, C. J., and FRICK, J., concur.