SARLLS, CITY CLERK, *v.* STATE OF INDIANA, EX REL. TRIMBLE ET AL.*

[No. 25,445.   Filed April 26, 1929.]

---

---

*Reported and annotated 67 A. L. R. 718, 737.

*Edwin C. Henning* and *Daniel H. Ortmeyer*, for appellant.

*Edmund L. Craig, Albert J. Veneman* and *Funkhouser, Funkhouser & Markel*, for appellees.

MARTIN, C. J.—This is an action in mandate to compel the appellant, as city clerk of Evansville, to amend or change a certificate which he made in compliance with Acts 1921, ch. 218, §3, §10190 Burns 1926, after a petition had been filed with him on April 11, 1927, asking that the question of adopting the city-manager plan of government be submitted to the voters of that city. The clerk certified to the legislative authority of the city that he was unable within five days allowed by law to determine whether the petition was signed by a sufficient number of qualified electors, and this action sought to compel him to amend his certificate to read and show

that the petition was signed by a sufficient number of qualified voters and that the same was a sufficient petition.

The complaint, to which a demurrer was filed and overruled, alleged that, at the last preceding general municipal election in Evansville, the total number of electors who voted in said election was 31,201, and that the petition was signed by 13,388 persons, who, at the time of the signing and filing of the petition, were qualified electors of the city; it set forth the certificate of the clerk (hereinafter, in part, set out) and alleged that, when the clerk made said report or certificate, he well knew and believed that it was signed by a sufficient number of qualified electors, that his certificate did not speak the truth and that it should be amended as above noted.

The section of the statute above referred to is as follows:

"All petition papers requesting any such election shall be assembled and filed with the city clerk as one instrument, and the petition shall be deemed sufficient if signed by electors of the city equal in number to at least twenty per cent. of those who voted at the last preceding general municipal election. Within five days after any such petition is filed, the clerk shall complete an examination thereof to determine whether it is signed by a sufficient number of qualified electors, and he shall certify the result of his examination to the legislative authority of the city at its first regular meeting held after the completion of such examination."

Among the errors relied upon for reversal is the overruling of appellant's motion for a new trial for the reason that the decision of the court is not sustained by sufficient evidence. The evidence consisted of an agreed statement of facts, which showed the filing of the petition, which was in the form prescribed by

statute ("We the undersigned, voters of the City of Evansville, Indiana, respectfully petition that the following question be submitted to the voters of said city— 'Shall the City of Evansville adopt the City Manager plan of government as provided in the laws of 1921 chapter 218?'"), the certificate or return of the clerk above referred to, a statement that the records of the last general municipal election had been destroyed except the certificate of the canvassing board showing the total number of votes cast for each candidate and that there were 31,161 votes cast for mayor, 31,201 for city clerk, 31,185 for city judge, 31,223 for ward councilman and that the aggregate vote for the four Republican candidates for councilmen at large was 74,124 and for the four Democratic candidates for councilmen at large was 50,718 and that an aggregate of 56,546 persons were registered to vote at said municipal election. The certificate or return of the clerk was in part as follows:

"In the discharge of the duties placed upon me by section three of the act, I have made as careful and painstaking an examination of said petition as the time and facilities available to me permitted, in order to determine whether it is signed by a sufficient number of qualified electors of the city equal in number to at least twenty per cent. of those who voted at the last preceding general municipal election.

"I have completed an examination of 2,074 names signed to said petition and have found that 1,312 of such names appear on the registration books of the last preceding general municipal election. I have been unable to complete an examination of the remaining names signed to said petition.

"I have been unable to complete an examination of said petition to determine whether it is signed by a sufficient number of qualified electors and I have been unable to determine whether said petition is

signed by a sufficient number of qualified electors and I have been unable to determine whether said petition is signed by electors of the city equal in number to at least twenty per cent. of those who voted at the last preceding general municipal election and I have been unable to determine the number of electors of the city who voted at the last preceding general municipal election."

The statute, in requiring the clerk to determine within five days whether the petition is signed by a sufficient number of qualified electors equal to 20 per cent of those who voted at the last city election, imposes a task upon city clerks that may be very difficult to accomplish within the time allowed therefor, especially in a city the size of Evansville. There is no allegation of fact in the complaint to sustain the conclusion pleaded therein that the clerk well knew and believed that the petition was signed by a sufficient number of qualified electors, and no attempt was made at the trial to prove that the 13,388 persons who signed the petition (or such number of them as exceeded 20 per cent of the votes at the last city election) were qualified electors as alleged in the complaint, other than the declaration contained in the text of the petition quoted above, except that it was agreed that the three relators were residents and legal voters of Evansville.

The appellee, to sustain the finding and judgment, contends that the petition "is *prima facie* evidence that the signers were electors" and that, "by examining the petition, the clerk could ascertain the number of persons who said therein that they were voters of the city of Evansville." But we cannot read into this statute something that is not there. Unless the statute so provides, we cannot hold that the signatures were *prima facie* evidence that the signers were electors. The requirement of the statute is that the clerk determine whether it is signed by a sufficient

number of qualified electors, not that he determine whether it is signed by the proper number of persons who state therein that they are voters. It follows that the decision was not sustained by sufficient evidence.

In this connection, it may be well to note that §3, (Acts 1921, ch. 218) above quoted, since the trial of this cause, has been amended by Acts 1929, ch. 60, §1, which enacts into the law the provisions which appellee would have us read into the original section of the law by judicial construction, but which we cannot do.

## CONSTITUTIONAL QUESTION WILL BE DECIDED.

The appellant, under his assignment of error that the court erred in overruling his demurrer to the complaint, contends that the law providing for the commission and the city-manager forms of government in cities, Acts 1921, ch. 218, §§10188-10256 Burns 1926, is in conflict with the Constitution and invalid for numerous alleged reasons. It is doubted if this appellant, as an administrative officer, and in this sort of an action, can insist that the court decide such questions, since a party cannot question the constitutionality of a statutory provision unless he shows that some right of his own is thereby impaired or prejudiced, *Tomlinson* v. *Bainaka* (1904), 163 Ind. 112, 119, 70 N. E. 115; *State* v. *Gerhardt* (1896), 145 Ind. 439, 450, 44 N. E. 469, 33 L. R. A. 313; *Currier* v. *Elliott* (1895), 141 Ind. 394, 407, 38 N. E. 556; and, for an administrative officer "merely to perceive that someone might attack the law on constitutional grounds" is not sufficient cause for him to refuse to perform a duty enjoined by the law and which it is sought to enforce by mandate. *State, ex rel.*, v. *Bowman, Auditor* (1927), 199 Ind. 436, 467, 156 N. E. 394, 157 N. E. 723. None of appellant's constitutional objections are directed to the section of the act (§3) directly involved herein, and even if other portions of the act

were unconstitutional, their invalidity would not invalidate the entire act if their elimination leaves a complete statute that can be enforced.[1] *State, ex rel.*, v. *Blend* (1889), 121 Ind. 514, 521, 23 N. E. 511, 16 Am. St. 411; *State, ex rel.*, v. *Gorby* (1890), 122 Ind. 17, 29, 23 N. E. 678; *Swartz* v. *Board, etc.* (1902), 158 Ind. 141, 151, 152, 63 N. E. 31.

The constitutionality of a statute will not be determined unless it is necessary to do so in order to determine the merits of the suit in which such constitutionality has been drawn in question.[2] *State, ex rel.*, v. *Wheaton* (1923), 193 Ind. 30, 138 N. E. 820; *Higgins* v. *Swygman* (1923), 194 Ind. 1, 141 N. E. 788; *Hewitt* v. *State* (1908), 171 Ind. 283, 86 N. E. 63.   It is true that this case can be decided without going into the constitutional questions, but we believe that the merits of the controversy before us cannot be completely determined without a consideration of such questions.  The constitutional questions have been exhaustively briefed by both parties, and, in view of their manifest public importance, of the fact that an ultimate decision of them must sometime be arrived at in this court, and of the holding of our own court that a public officer cannot be compelled to obey a statute that is unconstitutional, even when he is sued in mandamus, *Parker* v. *State, ex rel.* (1892), 133

---

[1] If invalid provisions numerously permeate a law and are so connected with any valid provision therein that it is apparent the Legislature would not have passed the act except as a whole, the entire act will fall by reason of such invalid provisions.  *Griffin* v. *State, ex rel.* (1889), 119 Ind. 520-522, 22 N. E. 7; *State, ex rel.*, v. *Fox* (1902), 158 Ind. 126, 130, 63 N. E. 19, 56 L. R. A. 893.

[2] In *West* v. *Spencer* (1911), 238 Mo. 65, 69, 141 S. W. 586, 587, it was said:  "In deciding cases it is a very good rule not to decide today (in an instant case) what you might better decide tomorrow (in some other case).  The rule has a tendency to exclude *obiter*, it points the distinction between a legal treatise on a general head of the law, and a judicial opinion on a concrete case and it saves trouble to those judges who come after us and are called to decide the question as vital and turning in some appeal."

Ind. 178, 32 N. E. 836, 18 L. R. A. 567; *Board, etc.*, v. *State, ex rel.* (1900), 155 Ind. 604, 58 N. E. 1037; *State, ex rel.*, v. *Commercial Ins. Co.* (1902), 158 Ind. 680, 64 N. E. 466, we shall proceed to a consideration of whether the entire act is unconstitutional by reason of the alleged unconstitutionality of various sections thereof.

CHAPTER 218, ACTS 1921, DOES NOT VIOLATE THE SEC-
TION OF THE CONSTITUTION WHICH PROVIDES THAT
EVERY ACT SHALL EMBRACE BUT ONE SUBJECT
WHICH SHALL BE EXPRESSED IN THE TITLE.

The law in question (Acts 1921, ch. 218, §§10188-10256 Burns 1926), was enacted under the title: "An act to provide alternative forms of government for cities adopting the same." Section 50 of the act provides that its first 49 sections shall apply to any city adopting either of the plans of government provided for, that §§51 to 60 shall apply only to cities voting to adopt the *commission plan* and that §§61 to 67 shall apply only to cities voting to adopt the *city manager plan*. While two alternative plans of city government are provided for, there is but one general subject of legislation involved in the title and in the body of the act, viz., forms of government for cities. The title and the act, therefore, do not violate *§19, Art. 4, Constitution* (§122 Burns 1926) which provides (in part) that: "Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title."

This constitutional provision was intended to prevent the combining of nonrelated subjects (*Mull* v. *Indianapolis, etc., Traction Co.* [1907], 169 Ind. 214, 81 N. E. 657), and the case at bar is readily distinguished from *Jackson* v. *State, ex rel.* (1924), 194 Ind. 248, 142 N. E. 423, and similar cases, where

laws which embrace two unrelated subjects—as motor vehicles and inheritance tax—have been declared invalid. Generality of a title is not objectionable if it is not made a cover to legislation incongruous in itself, and which, by no fair intendment, can be considered as having a necessary or proper connection. *Crabbs* v. *State* (1923), 193 Ind. 248, 255, 139 N. E. 180. If the title expresses the general purpose of the act, everything contained in the act which is germane to such purpose or properly connected therewith, as a means of making the act effective, is covered by the title. *Wright* v. *House* (1919), 188 Ind. 247, 259, 121 N. E. 433; *Crabbs* v. *State, supra.* If the title covers a general subject, it need not go further; it is not necessary that the title should contain a complete abstract of the contents of the act or enumerate all its provisions, matters and details. *Baltimore, etc., R. Co.* v. *Whiting* (1903), 161 Ind. 228, 68 N. E. 266; *Baldwin* v. *State* (1923), 194 Ind. 303, 141 N. E. 343; *Cyrus* v. *State* (1924), 195 Ind. 346, 145 N. E. 497.

DOES NOT VIOLATE CONSTITUTIONAL PROVISION THAT CORPORATIONS (OTHER THAN BANKING) CANNOT BE CREATED BY SPECIAL ACT.

*Section 13, Art. 11, Constitution* (§219 Burns' 1926) providing that, "Corporations other than banking shall not be created by special act, but may be formed under general laws," applies to municipal corporations, as well as to private corporations, *Town of Longview* v. *City of Crawfordsville* (1905), 164 Ind. 117, 73 N. E. 78, 68 L. R. A. 622, 3 Ann. Cas. 496; *Jordan* v. *City of Logansport* (1912), 178 Ind. 629, 644, 99 N. E. 1060; *Rosencranz* v. *City of Evansville* (1924), 194 Ind. 499, 505, 143 N. E. 593, and, under it, an amendment attempting to increase the capital stock of a corporation which was created by

a special act (prior to 1851) was held to be in effect the creation of a new corporation, and, therefore, void. *Marion Trust Co.* v. *Bennett* (1907), 169 Ind. 346, 82 N. E. 782.

But the act before us and municipal corporations which adopt a new form of government under the act (and thus, in effect, "amend their charters"), do not create (or amend) a corporation by special act. This act is general in its terms; it makes no "unreasonable and arbitrary classification," as appellant contends, but applies equally to all cities of the state that decide to avail themselves of its provisions. Appellant's contention that the act is a special act is discussed more at length in those paragraphs of the opinion, *infra,* which consider whether the law is a local and special law for the punishment of crime, is a local and special law in relation to fees and salaries or is a law the taking effect of which depends upon some authority not provided for in the Constitution (viz., the vote of the citizens of the city).

SECTIONS 39, 40 AND 41 DO NOT VIOLATE THE SECTIONS OF THE CONSTITUTION WHICH FORBID LOCAL AND SPECIAL LAWS FOR PUNISHMENT OF CRIMES, AND PROVIDE AGAINST THE LEGISLATIVE GRANT OF SPECIAL PRIVILEGES AND IMMUNITIES, NOR THE FOURTEENTH AMENDMENT, UNITED STATES CONSTITUTION, WHICH PROVIDES FOR THE EQUAL PROTECTION OF THE LAWS.

*Sections 39 and 40* of the act, which forbid active participation by city employees in party politics, and §*41,* which provides that a violation of these sections shall be a misdemeanor punishable by fine and imprisonment, do not violate *subd. 2, §22, Art. 4, Constitution* (§125 Burns 1926) which forbids the passage of

"local or special laws . . . for the punishment of crimes and misdemeanors"; and do not violate §*23, Art. 1, Constitution* (§75 Burns 1926) which provides that "the General Assembly shall not grant to any citizen or class of citizens privileges or immunities which, upon the same terms, shall not equally belong to all citizens," or the *Fourteenth Amendment, U. S. Constitution* (§39 Burns 1926) which provides that "no state shall make or enforce a law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."

Subdivision 2, §22, Art. 4, Constitution, is not violated by this act, because it applies to all who come within its provisions, generally and without exception, and ▮ rests upon an inherent and substantial basis of classification. (See cases collected in *Fountain Park Co.* v. *Hensler* [1927], 199 Ind. 95 at p. 106, 155 N. E. 465; 50 A. L. R. 1518.) A law which applies generally to a particular class of cases is not local or special. The Constitution does not require that the operation of a law shall be uniform, other than that its operation shall be the same in all parts of the state under the same circumstances. *Bumb* v. *City of Evansville* (1907), 168 Ind. 272, 80 N. E. 625; *Smith* v. *Board, etc.* (1910), 173 Ind. 364-374, 90 N. E. 881.

Similar statutory provisions which prohibit political work by persons holding positions on the fire and police force of cities, and provide a penalty of fine or ▮ imprisonment, have been part of our law governing cities for the last 24 years (§10871 Burns 1926). Their constitutionality has never been questioned in this court, and legislative interpretation acquiesced in for a long period of time is entitled to great consideration. *State, ex rel.,* v. *Gerdink* (1909), 173 Ind. 245, 251, 90 N. E. 70.

In *People* v. *Murray* (1923), 307 Ill. 349, 138 N. E. 649, the court, in speaking of a law which prohibited

soliciting "any assessment, contribution or payment for any party or any political purpose whatever, from any officer or employee in any department of the city government which shall adopt this act," said, "The legislature may impose such conditions as it sees fit upon those to whom public office is entrusted in order to secure the prompt, efficient, faithful and impartial discharge of public duties"; and an act of Congress prohibiting officers and employees of the government from giving or receiving money for political purposes was held valid, *Ex parte Curtis* (1882), 106 U. S. 371, 1 Sup. Ct. 381, 27 L. Ed. 232, its purpose being "within the just scope of legislative power . . . to promote efficiency and integrity in the discharge of official duties and to maintain proper discipline in the public service."

## SECTIONS 14, 16, 21, 39, 40, 41 AND 62 DO NOT VIOLATE CONSTITUTIONAL PROVISIONS RESPECTING FREE AND EQUAL ELECTIONS AND PROHIBITING THE GRANTING OF SPECIAL PRIVILEGES AND IMMUNITIES.

*Section 21,* which provides that the commission shall be judge of the election and qualification of its members, subject to review by the courts in case of conflict; §*16,* which provides for ballots without political party mark or designation; §*14,* which provides that a candidate's name shall be printed on the ballots if within five days after his nomination he shall file an acceptance of the nomination and §*62,* which provides that the city manager need not, when appointed, be an inhabitant of the city or state; as well as §§*39, 40 and 41,* considered above, do not violate §1, Art. 2, Constitution (§90 Burns 1926) providing that all elections shall be free and equal, nor §23, Art. 1, Constitution (§75 Burns 1926) prohibiting the granting of special privileges and immunities.

The provision in the act that makes the commissioners the judges of their own election is not in violation of these provisions of the Constitution, since a person has no vested right to an office, *Lyons* v. *Becker* (1916), 272 Ill. 333, 111 N. E. 980, 983; *Bowen* v. *Russell* (1916), 272 Ill. 313, 111 N. E. 978, and where the commissioners are judges of the election and qualifications of their members, they possess the exclusive authority to pass on the subject, and the courts have no jurisdiction (unless authorized by statute) to inquire into the qualifications and election of such members. *People* v. *Metzker* (1874), 47 Cal. 524; *Mitchell* v. *Witt* (1900), 98 Va. 459, 36 S. E. 528; *Attorney General* v. *Sands* (1894), 68 N. H. 54, 44 Atl. 83; *Booth* v. *County Court* (1893), 18 Colo. 561, 33 Pac. 581.

The people have an inalienable right to organize and operate political parties, and the law in question does not prohibit political parties nor authorize interference with them. Any political party may indorse, support and work for the election of any candidate of its choice, but no authority has been noted which holds that a party can, as an abstract right, require that a designation of the candidates' political affiliation be placed upon the ballot, in the absence of a statutory provision to that effect. *State, ex rel.,* v. *Portland* (1913), 65 Ore. 273, 133 Pac. 62.

Appellant's contention that §14 "excludes from office the person who may be willing to serve when chosen, that is, if he is drafted, and the electors are deprived of their opportunity to nominate him and cast their votes for him as a regular candidate, with his name appearing on the printed ballot," is indeed novel, but, as a constitutional argument, it deserves little comment. The requiring of affirmative action by a candidate for nomination for office to show that he consents to be a candidate is and has been required

in this state for many years. The section of the law here objected to reasonably regulates the conditions under which nominating petitions shall be filed, and under which the names of candidates shall be placed upon the ballot.

None of the above sections of the Constitution, nor §6, *Art. 6,* thereof (§163 Burns 1926) providing that "all county, township and town officers shall reside within their respective counties, townships and towns; and shall keep their respective offices at such places therein . . . " is violated by §62 of the act before us. This constitutional requirement can only reasonably be interpreted to mean that the officers mentioned shall be residents when serving as such officers, not that they shall be inhabitants of the city when appointed[3] (or for a year preceding their election as provided in the general municipal corporations act of 1905 as amended, §10266 Burns 1926), conceding for argument that the word "town," as used in the Constitution, is generic and includes the city here involved. See *State, ex rel.,* v. *Gerdink, supra; City of Indianapolis* v. *Higgins* (1894), 141 Ind. 1, 9, 40 N. E. 671.

### SECTION 62 DOES NOT VIOLATE CONSTITUTIONAL PROVISION PROHIBITING LOCAL OR SPECIAL LAWS IN RELATION TO FEES AND SALARIES AND RESPECTING EQUAL PRIVILEGES AND IMMUNITIES.

*Section 62* of the act providing that the commission may fix the salary of the city manager, and the fact that the act does not provide any limit on salaries of any officer of the city except commissioners, does

---

[3] This part of the plan was doubtless originally copied from the plan prevailing in Germany of selecting burgomasters from other cities and which widens the field from which to select a competent and impartial administrator. The podesta of the old Italian cities, that he might be entirely impartial and free from local or undue influence, could not marry a native of the city he governed, have any relation resident within the area, hold property there or even eat and drink in the house of any citizen. 1 McQuillin, Municipal Corporations pp. 878, 879.

not violate §*22*, *Art. 4, Constitution* (§125 Burns 1926) prohibiting local or special laws "in relation to fees or salaries; except that the laws may be so made as to grade the compensation of officers in proportion to the population and the necessary services required," and §*23, Art. 1, Constitution* (§75 Burns 1926) respecting equal privileges and immunities. Appellant has cited a number of cases holding invalid certain special or local laws in relation to fees and salaries. But the city-manager act is not a local or special law, but, as hereinbefore and hereinafter noted, is available and applicable to all municipalities of the state whose electors choose to adopt it. The power of the Legislature to change the form and mode in which a municipal corporation shall be governed is recognized in *State, ex rel.,* v. *Denny* (1888), 118 Ind. 382, 21 N. E. 252, 44 L. R. A. 79; and, in *Arnett* v. *State, ex rel.* (1907), 168 Ind. 180, 80 N. E. 153, 8 L. R. A. (N. S.) 1192, it was held that the fixing of the compensation of a public officer is not so inherently of a legislative character that it may not be delegated.

The Legislature may delegate to municipal corporations and their officers all powers incidental to municipal government, whether legislative or otherwise, without violating the rule against a delegation by the Legislature of its lawmaking power. *Grand Trunk Western R. Co.* v. *City of South Bend* (1909), 174 Ind. 203, 209, 89 N. E. 885, 91 N. E. 809; *School City of Marion* v. *Forrest* (1906), 168 Ind. 94, 73 N. E. 187; 12 C. J. 859. Statutes similar to the one now being considered were held not to be void as a delegation of legislative powers to municipalities, in relation to salaries, in *Eckerson* v. *Des Moines* and in *Cole* v. *Dorr, infra,* note 6.

The power to fix salaries is delegated by numerous sections of our old municipal corporations law; common councils may, by ordinance, fix the salaries of members

of the board of works (§10264 Burns 1926); of city treasurer, city judges and county auditors serving the city (§10266 Burns 1926) of mayors, city comptrollers, deputy comptrollers, city clerks, city engineers, city attorneys (§10297 Burns 1926); of all officers in cities of the third class (§10301 Burns 1926); of city comptrollers in cities of first, second and third class (§10309 Burns 1926); and salaries of court reporters are fixed by the judge (§1852 Burns 1926).

SECTIONS 1, 9, 16, 41, 42 AND 62 DO NOT VIOLATE CON-STITUTIONAL PROVISIONS THAT THE LEGISLATIVE AU-THORITY OF THE STATE SHALL BE VESTED IN THE GENERAL ASSEMBLY, THAT THE TAKING EFFECT OF NO LAW SHALL DEPEND UPON ANY AUTHORITY EXCEPT AS PROVIDED IN THE CONSTITUTION, AND THAT THE OPERATION OF LAWS SHALL NEVER BE SUSPENDED EXCEPT ON AUTHORITY OF THE GENERAL ASSEMBLY.

*Section 1* of the act, which provides that it "shall apply to and become operative in any city which . . . adopts one of the plans of government" therein provided for; §*9*, which provides that in such cities the common council, mayor, executive departments, etc., shall be abolished and their rights, powers and duties shall be transferred to the commission; §*16* which provides that ballots for the election of commissioners shall be without political party mark or designation; §*41*, which makes penal in such city political activity on the part of its officers and employees; §*42*, which provides that a commissioner during his term may not be appointed to any city, county or state office or employment; and §62, which provides that the city manager need not, when appointed, be an inhabitant of the city or state and shall receive such compensation as may be fixed by the commission, do not violate §*1*, *Art. 4*, *Constitution* (§104 Burns 1926) providing that the legislative authority of

the state shall be vested in the General Assembly; §*25, Art. 1, Constitution* (§77 Burns 1926) providing that "no law shall be passed, the taking effect of which shall be made to depend upon any authority except as provided in this Constitution," or §*26, Art. 1, Constitution* (§78 Burns 1926) providing that the operation of the laws shall never be suspended except by authority of the General Assembly.

Section 1 *et seq.* provide that, upon the filing of a proper petition with the city clerk, and report by him to the legislative authority of a city, an election is ordered to determine whether the commission or city-manager form of government shall be adopted. If said vote is favorable to such a plan, commissioners are thereafter elected, to whom are transferred the powers of the city government. Upon adoption of the plan, the act applies to and becomes operative in the city.

The Legislature may not delegate its power to make a law, but it can make a law to become operative on the happening of a certain contingency or on the ascertainment of a fact upon which the law makes its own action depend. Thus, the grant by the Legislature of the right to submit to the electors of a city for adoption a commission or manager form of government, upon which adoption the statute by its own terms makes such form operative, is valid, and the reported cases are unanimous in declaring that such statutes do not delegate legislative power[4] and are not local and special laws. See cases

---

[4]The cases of *Groesch* v. *State* (1873), 42 Ind. 547, 557, and *McPherson* v. *State, infra,* are cited by appellant to the undenied proposition that legislative authority cannot be delegated. In *Groesch* v. *State,* it was held that an act which required an applicant for a permit to sell intoxicating liquor to secure a petition signed by a majority of the voters in his ward or township, did not confer legislative authority upon the people, that the people did not determine whether the law should take effect—that it was in force from and after its passage, and said: "This is a species of self government which by the law is placed in the hands of the people to be exercised by a majority of them according as they may judge to be for their best interest."

cited in note 6, *infra*, particularly *State* v. *Tausick* (Wash.), *Munn* v. *Finger* (Fla.), *Mayor of Jackson* v. *State, ex rel.* (Miss.), *Eckerson* v. *Des Moines* (Iowa), *Cole* v. *Dorr* (Kans.), *State* v. *Canavan* (Wis.), *State, ex rel.,* v. *Ure* (Nebr.), *Bryan* v. *Voss* (Ky.), and *People, ex rel.,* v. *Edmands* (Ill.).

The "taking effect" of the act does not depend upon any election—it became effective as a law when it passed the Legislature (and went through the formal processes of signature, approval, etc.) and will become operative in any city whenever the procedure outlined above is had. In *Cole* v. *Dorr, infra,* note 6, it was said:

> "Even in jurisdictions where it is held that the taking effect of a statute cannot be made to depend upon the result of a popular vote, the principle is recognized that 'if an act in question is complete in itself, and requires nothing further to give it validity as a legislative act, it is not vulnerable to attack on constitutional grounds simply because the limits of its operation are made to depend upon a vote of the people.' *Eckerson* v. *Des Moines,* 137 Iowa 452, 478, 115 N. W. 177, 187."

In *McPherson* v. *State* (1909), 174 Ind. 60, 71, 73, 90 N. E. 610, 31 L. R. A. (N. S.) 188, it was held that the Legislature, in passing a law which provided for "county option" elections to determine whether intoxicating liquors could be sold in the several counties, did not give to the voters any legislative power or authority to assist in making the law, contrary to §1, Art. 4, Constitution. The court said:

> "In taking a vote, the electors of the county are not giving effect to the law, or exercising legislative power, they are only participating in the execution or administration of the law. . . . The people by voting . . . add nothing to the law and take nothing from it. It is the law that authorizes the vote, and the law that declares what the result of the election shall be."

Considering the act with reference to §25, Art. 1, Constitution the court said (in part):

"The favorable majority of a county has nothing to do in giving effect, validity or power to the law. It is the passage . . . by the general assembly that gives to it the force and effect of law. . . . For want of a subject to operate on it may rest quiescent for an indefinite period, but it is constantly present in every part of the state, ready to be invoked for the purposes of its enactment."

It has long been held that laws may be enacted which provide for the petition or vote by a certain number before the benefits of the law can be secured, *Thompson* v. *Peru* (1868), 29 Ind. 305; *Lafayette R. Co.* v. *Geiger* (1870), 34 Ind. 185; *School City of Marion* v. *Forrest, supra,* and, for many years (since 1905), the voters residing in towns of over 2,000 inhabitants have been permitted under a general law to determine by an election whether they shall be incorporated as a city (§10257 Burns 1926), and be governed by the laws pertaining to cities, or, as an alternative, remain a town governed by the laws pertaining to towns (§11247 *et seq.* Burns 1926).

*Cain* v. *Allen* (1906), 168 Ind. 8, 22, 79 N. E. 201, and *State* v. *Gerhardt, supra,* at p. 472, sustain appellant's undenied proposition that the Legislature cannot delegate the power to suspend the operation of a statute, but, as noted in *McPherson* v. *State, supra,* "it is the legislative decree and not the vote" that suspends the the former law. It, therefore, cannot be held that any delegated power in §9 suspends "the operation of the general laws governing all cities," or in §16, suspends "the general election laws providing for political party participation in the nomination and election of city officers," or in §62 suspends "as to such city, the requirement that officers of the city shall have been resident for a year preceding election,

or the statutory provisions limiting salaries that may be voted to city officers."

## DOES NOT VIOLATE THE (U. S.) CONSTITUTIONAL GUARANTY OF A REPUBLICAN FORM OF GOVERNMENT OR THE CONSTITUTIONAL PROVISION DIVIDING POWERS OF GOVERNMENT INTO THREE SEPARATE DEPARTMENTS.

The commission and city-manager forms of government have been developed throughout the United States within the past 20 years.[5] During that time (particularly from 1911 to 1915) the courts of last resort in many states have, in more than a score of cases, considered the contention that acts creating such governments (in which legislative, executive and judicial powers are merged in commissions or officers), violated the constitutional divisions of the powers of government into the legislative, executive and judicial departments.

---

[5]Washington, D. C., has been governed by a commission since 1878. Following the inundation of Galveston, Texas, by a tidal wave in 1900, a commission plan of government was established there to speed up the work of rehabilitation. The city-manager plan was inaugurated in Staunton, Virginia, in 1908. Varying types of these two plans are authorized in 44 states and are in operation in cities of 26 states. There are at this date more than 400 cities and towns throughout the United States governed by these plans; among them are Des Moines, Iowa; Kansas City, Missouri; Cleveland, Cincinnati and Dayton, Ohio, and Grand Rapids, Michigan. Many books and magazine articles (see lists collected in notes, 1 McQuillin, Mun. Corp. [1928] pp. 872, 873) have appeared on these forms of government.
In this opinion, the federal form or plan of city government is referred to as "old" and the commission or city-manager plan as "new." While these designations are correct as to Indiana, an examination of current legislation shows an even more recent plan of home rule laws for cities. See ch. 363, Acts 1924 New York City Home Rule Law enacted under Home Rule Article (12) of New York Constitution; *Bareham* v. *City of Rochester* (1927), 246 N. Y. 140, 158 N. E. 51. A "Home-Rule Amendment" to the Colorado Constitution was adopted in 1912, under which the commission-form of government was established in cities. See *People* v. *Prevost* (1913), 55 Colo. 199, 134 Pac. 129.

These cases, collected in a foot note,[6] uniformly hold: (a) That such forms of government do not violate §4, Art. 4, U. S. Constitution, which provides that "the United States shall guarantee to every state in the union a republican form of government," since such constitutional provision has application only to the forms of state governments and does not apply to the regulation of the affairs of municipalities or to local subdivisions of the state,[7] see particularly *Eckerson* v. *De-Moines* (Iowa), *Walker* v. *Spokane* (Wash.), and *People, ex rel.,* v. *Edmands* (Ill.), and (b) that such forms of

---

[6]*Brown* v. *City of Galveston* (1903), 97 Texas 1, 75 S. W. 488; *Eckerson* v. *Des Moines* (1908), 137 Iowa 452, 115 N. W. 177; *Cole* v. *Dorr* (1909), 80 Kans. 251, 101 Pac. 1016, 22 L. R. A. (N. S.) 534, and note; *State* v. *Tausick* (1911), 64 Wash. 69, 116 Pac. 651, 35 L. R. A. (N. S.) 802, and note; *Bryan* v. *Voss* (1911), 143 Ky. 422, 136 S. W. 884; *Walker* v. *City of Spokane* (1911), 62 Wash. 312, 113 Pac. 775, Ann. Cas. 1912C 994, and note; *People, ex rel.,* v. *Edmands* (1911), 252 Ill. 108, 96 N. E. 914; *Kessler* v. *Fritchman* (1911), 21 Idaho 30, 119 Pac. 692; *State* v. *Mankato* (1912), 117 Minn. 458, 136 N. W. 264, 41 L. R. A. (N. S.) 111, note. *State, ex rel.,* v. *Ure* (1912), 91 Nebr. 31, 135 N. W. 224; *Mayor of Jackson* v. *State, ex rel.* (1912), 102 Miss. 663, 59 So. 873, Ann. Cas. 1915A 1213-1217, and note; *People* v. *Perkins* (1913), 56 Colo. 17, 137 Pac. 55, Ann. Cas. 1914D 1154; *State, ex rel.,* v. *Lane* (1913), 181 Ala. 646, 61 So. 31; *State, ex rel.,* v. *Portland, supra; Munn* v. *Finger* (1914), 66 Fla. 572, 64 So. 271, 51 L. R. A. (N. S.) 631, and note; *Larsen* v. *Salt Lake City* (1914), 44 Utah 437, 141 Pac. 98; *State* v. *Canavan* (1914), 155 Wis. 398, 145 N. W. 44; *State, ex rel.,* v. *Thompson* (1915), 193 Ala. 561, 69 So. 461; *Booten* v. *Pinson* (1915), 77 W. Va. 412, 89 S. E. 985, L. R. A. 1917A 1244, note; *Barnes* v. *City of Kirksville* (1915), 266 Mo. 270, 180 S. W. 545; *State* v. *Bentley* (1917), 100 Kans. 399, 164 Pac. 290; *Cleveland* v. *City of Watertown* (1917), 222 N. Y. 159, 118 N. E. 500, Ann. Cas. 1918E 574; *State* v. *Sheldon* (1923), 29 Wyo. 233, 213 Pac. 92; *Kaufman* v. *City of Tallahassee* (1922), 84 Fla. 634, 94 So. 697, 30 A. L. R. 471.

[7]While some of the cases cited in note 6 hold that commission or city-manager forms of government may and do ignore the essential features of a republican form of government, it has also been held that "the test of republican or democratic government is the will of the people, expressed in majorities, under proper form of law" and that "so long as the ultimatum of decision is left to the will of the people, at the ballot box, it is essentially republican," etc. *Hopkins* v. *Duluth* (1900), 81 Minn. 189, 83 N. W. 536.

In *Pacific States, etc., Co.* v. *Oregon* (1912), 223 U. S. 118, 56 L. Ed. 377, 32 Sup. Ct. 224, and *Keirnan* v. *Portland* (1912), 223 U. S. 151, 56 L. Ed. 386, 32 Sup. Ct. 231, it was held that whether or not a state had ceased to be a republican form of government within the meaning of §4, Art. 4, Constitution because of the adoption of the initiative and referendum, is not a judicial question but a political one, which is solely in Congress to determine.

government do not violate provisions of state constitutions which divide the powers of the government into three departments and provide that no person or persons belonging to or constitutiug one department shall exercise any of the powers properly belonging to either of the others, since such constitutional provisions apply only to the (sovereign) state governments. See particularly *Barnes* v. *City of Kirksville* (Mo.); *Bryan* v. *Voss* (Ky.), and *State* v. *Mankato* (Minn.).

This court has heretofore held in *Baltimore, etc., R.Co.* v. *Whiting* (1903), 161 Ind. 228, 68 N. E. 266, and in *Livengood* v. *City of Covington* (1924), 194 Ind. 633, 144 N. E. 416, and we now reaffirm the proposition, that Art. 3, Constitution (§103 Burns 1926) providing that "the powers of the government are divided into three separate departments; the legislative, the executive (including the administrative) and the judicial, and no person charged with official duties under one of these departments shall exercise any of the functions of another except as in this Constitution expressly provided," relates solely to the state government and officers and their duties under one of the separate departments of state and not to municipal government and officers.

The theory of the commission and city-manager forms of government is that the administration of the affairs of a city is more like the conduct of a large business corporation than it is like the government of a state, and that a small, wieldy, responsible commission, with centralized power and ability to act promptly, should replace the slow, cumbersome and wasteful processes of separate powers, with divided responsibility. See *Kaufman* v. *Tallahassee* (Fla.); *Barnes* v. *City of Kirksville* (Mo.), and *State* v. *Bentley* (Kans.), cited *supra* in note 6.

The federal plan of municipal government now in effect in this state has proved by years of operation to be a workable and satisfactory law when capably and

honestly administered, and its provisions have been the subject of considerable judicial interpretation.[8] Competent observers (Fassett, Munro, Goodnow and Bates, et al.; see 1 McQuillin, Mun. Corp. §353) have noted that civic obligations can be and are as persistently evaded by citizens under the new plans as under the old; that behind structure, charter and legal form lie the force of the people that vitalize the municipal organ and make it work to execute their will and purpose, or neglect it and permit the misuse of power at the hands of incapable, perverse or corrupt men. No mere form of government can *ipso facto* take away the ever-present possibility that special and selfish political or business interests may gain control of a city's government or business operation, and it is apparent that the success of any municipal administration depends largely upon the character and ability of the personnel who run it.[9]

In *State, ex rel.,* v. *Tausick, supra,* note 6, it was said:

"This may be a peculiar, unique and unusual method of organization for municipal government, which will perhaps from time to time call for judicial construction. Possibly the plan thus provided for a commission form of government may not commend

---

[8]The theory that the administration of a city's affairs under a commission or city-manager law is a business and not a governmental function has in some states resulted in a material change in the interpretation of the law as it previously existed. See, with reference to the liability of a city for torts, the case of *Kaufman* v. *City of Tallahassee, supra,* note 6, which holds that the commission and city-manager plans of government practically eliminate any necessity for determining whether or not the tortious act was done while the city was acting in a governmental or proprietary capacity. See note, 30 A. L. R. 473; see, also, *Aschoff* v. *City of Evansville* (1904), 34 Ind. App. 25, 72 N. E. 279, and note (9 A. L. R. 143) to *Fowler* v. *City of Cleveland* (1919), 100 Ohio St. 158, 126 N. E. 72, 9 A. L. R. 131.

[9]"The success of this, as all other plans, in the hands of the electors must depend upon their interest and attitude of mind in supporting the local governments. Indifferent citizenship may seriously hamper if not destroy the high purpose of a capable, energetic administration. Without good faith and intelligent co-operation by the citizens the best public servants will lose spirit and fail in providing needed public service."—McQuillin, Mun. Corp. (2 ed.) 878.

itself to universal approbation, but such suggestions do not concern the courts. Laws will not be held invalid for any such reasons. All statutes regularly . enacted and approved by the governor are presumed to be constitutional, and the courts will not declare them invalid unless they clearly violate some constitutional provision."[10]

Because of the failure of the evidence to support the decision, the judgment is reversed, with directions to sustain appellant's motion for a new trial.

Myers, J., concurs in the conclusion.

Willoughby and Travis, JJ., concur only in the conclusion that the decision of the court is not sustained by sufficient evidence.

[10]In *State* v. *Gerhardt, supra,* we said: "A court cannot declare a statute unconstitutional and void solely on the ground . . . (that) it is supposed to violate the natural, social or political rights of a citizen unless it can be shown that such . . . rights [are] guaranteed or protected by the Constitution. . . . It is only when made to appear clearly, palpably, and plainly and in such manner as to leave no reasonable doubt or hesitation in our minds, that a statute violates some provision of the constitution that we can consistently declare it void."