STATE of Indiana, on the relation of
Roger Lee SMITH, Relator,

v.

The STARKE CIRCUIT COURT, and The
Honorable Marvin D. McLaughlin,
Judge of the Starke Circuit Court, Re-
spondents.

No. 780S210.

Supreme Court of Indiana.

March 23, 1981.

Frank E. Spencer, Indianapolis, for relator.

Theodore L. Sendak, Atty. Gen., Joseph N. Stevenson, William E. Daily, Deputy Attys. Gen., Indianapolis, for respondents.

PIVARNIK, Justice.

This cause is before us by virtue of relator's petition for a writ of mandate and prohibition against respondents, the Starke Circuit Court and the Honorable Marvin D. McLaughlin as judge of that court. At the heart of this case is a question concerning the constitutionality of Ind. Code §§ 33–4–1–74.3—33–4–1–74.9 (Burns Supp. 1980). These statutes concern the appointment of a master commissioner by the circuit court judge, and the commissioner's exercise of certain duties authorized by the sections in question. On July 21, 1980, this Court issued a temporary writ of mandate to the Starke Circuit Court and Judge McLaughlin. This opinion is in furtherance of those proceedings, and with this opinion we order that the writ of mandate shall be made permanent. In addition, we grant the petitions for leave to appear as amici curiae filed by the Vanderburgh and St. Joseph Circuit Courts. As we shall explain, we find certain statutory provisions to be violative of established principles found in the Indiana Constitution concerning the operation of the judiciary.

The procedural facts giving rise to this action may be summarized as follows. On March 3, 1979, Roger Lee Smith, relator in this original action, filed a petition for dissolution of marriage against his wife, Wanda Smith, in Starke Circuit Court. The previously appointed commissioner of the Starke Circuit Court, David P. Matsey, purported to act as the judge in the *Smith* marriage dissolution case. It is not disputed that Matsey performed the following acts pertaining to the resolution of the *Smith* case: signed the entry of filings; ordered hearings; ruled on motions; heard evidence and tried the cause as judge; entered judgment in the form of a decree on November 7, 1979; entered an amended judgment on January 31, 1980; and overruled the motion to correct errors. It is also not disputed that Matsey, in performing these acts, did not purport to act as a special judge or as judge pro tempore of the Starke Circuit Court. Matsey purported to adjudicate this matter solely in his capacity as Master Commissioner of the Starke Circuit Court.

On April 23, 1980, after Matsey had ruled on the motion to correct errors, Roger Smith's counsel filed a "Motion to Strike Purported Entry of Judgment, and Determination of Cause by Elected Judge." This pleading requested that respondent Judge McLaughlin strike Commissioner Matsey's purported entry of judgment and amendment of judgment. The entry of this filing was made by Commissioner Matsey. On May 22, 1980, Matsey entered an order purporting to overrule the motion to strike.

On June 13, 1980, relator's counsel filed a "Praecipe for Notice of Withdrawal of Submission," pursuant to Ind.R.Tr.P. 53.1(B), along with a suggested "Notice of Withdrawal of Submission." The theory behind this filing, of course, was that the duly-elected judge of the Starke Circuit Court, Marvin McLaughlin, had not ruled upon the motion to strike within thirty days of its filing, as called for in Trial Rule 53.1(A). Approximately one week later, relator's counsel was informed by the Starke Circuit Court Clerk's office that the Trial Rule 53.1 filings had been taken to the "judge" and had not been acted upon by the clerk. *See* Ind.R.Tr.P. 53.1(B). A few days later, relator's counsel ordered certified copies of these filings from the Starke Circuit Court Clerk. These certified copies were prepared, minus the tendered "Notice of Withdrawal"; relator was informed that Commissioner Matsey had these filings and that they had not been entered. On July 11, 1980, relator received the certified copies he

had requested from the Circuit Court Clerk, together with a copy of the docket sheet for the Smith dissolution proceedings. The docket sheet shows the final entry, dated July 10, 1980, as follows: "Nunc pro tunc as of June 13, 1980. Petitioner tenders for filing his Praecipe for Notice of Withdrawal of Submission. The Clerk finds that there are no motions not ruled upon." The basis for this response seems to have been respondent's belief that Commissioner Matsey was fully authorized by statute to carry out all judicial duties concerning the Smith divorce proceedings, and that he had done so in accordance with Trial Rule 53.1.

Thereafter, relator filed his "Verified Petition for Writ of Mandate and Temporary Alternative Writ of Mandate." Relator asserts that the Smith marriage dissolution has not been tried and adjudicated by the judge of the Starke Circuit Court; that the motion to strike the purported entries of judgment and amended entry of judgment had not been ruled upon by the judge of the Starke Circuit Court; and that the Circuit Court Clerk had taken no action on his praecipe for notice of withdrawal of submission, in spite of the fact that the praecipe was filed more than thirty days after the filing of the motion to strike. Relator argues that Commissioner Matsey had no jurisdiction or power to purport to act as judge in the Smith marriage dissolution proceedings, and that respondent Judge McLaughlin originally had a duty to act as judge in that cause. Relator contends, therefore, that, by virtue of Judge McLaughlin's failure to rule on the motion to strike within thirty days and the filing of the Trial Rule 53.1 praecipe, respondent McLaughlin has lost the power to rule upon the motion to strike.

In his petition for a writ of mandate, relator prayed that the Court appoint a special judge or order that a writ be issued to respondent to show cause why a special judge should not be appointed to rule on the motion to strike and vacate Matsey's purported entries of judgment. After oral argument on this petition, this Court issued the temporary writ of mandate, and ordered the Clerk of this Court to issue an order to respondent to show cause, on or before August 22, 1980, why the Court should not appoint a special judge to rule on the motion to strike and to vacate the Commissioner's purported entries of judgment.

As stated earlier, we are concerned here with the validity, under the Indiana Constitution, of certain statutes which attempt to vest virtually full judicial powers on master commissioners who are appointed by, and serve at the pleasure of, circuit court judges. Respondent Judge McLaughlin appointed David P. Matsey Master Commissioner of the Starke Circuit Court pursuant to Ind. Code §§ 33–4–1–74.3 *et seq.* (Burns Supp. 1980). These statutes were passed by our legislature in 1977 and amended in 1978. Acts 1977, P.L. 314, §§ 1–7, p. 1452; *amended by* Acts 1978, P.L. 138, § 1, p. 1292. Section 33–4–1–74.3 provides that the Starke Circuit Court Judge may appoint a master commissioner. The commissioner must be an attorney in good standing and a resident of the county after his appointment. The appointment must be made in writing, and the commissioner continues in office until the judge removes him. Further, § 33–4–1–74.4 provides:

"(a) A master commissioner of the Starke Circuit Court may administer all oaths and affirmations required by law, take and certify affidavits and depositions, and issue subpoenas for witnesses whose testimony is to be taken before him. The master commissioner has the same power to compel the attendance of witnesses and to punish contempts as the judge of the court has. The master commissioner may conduct preliminary hearings in criminal matters and issue search warrants and arrest warrants and fix bond thereon.

(b) If empowered by the judge of the court, the master commissioner may exercise full jurisdiction over any probate matters, civil matters, or criminal matters, and he may enforce court rules. However, only the judge may exercise jurisdiction over juvenile matters."

In addition, § 33–4–1–74.5 permits the commissioner to serve as judge pro tempore of the court, but states that he shall receive no additional salary for such services. The master commissioner must devote full time to his duties, and may not otherwise engage in the practice of law; he is to receive the same salary as a judge of a county court. §§ 33–4–1–74.7; 33–4–1–74.8. *See* Ind. Code § 33–10.5–5–2 (Burns Supp. 1980). The commissioner is also entitled to participate in the public employees' retirement fund. § 33–4–1–74.9.

Further, § 33–4–1–74.6 provides:

"All inherent powers of judicial mandate in Starke County remain vested solely in the judge of the Starke Circuit Court."

Thus, the clear thrust of these statutes is to give the appointed commissioners the full scope of powers held by the regular Starke Circuit Court judge, except insofar as juvenile and mandate matters are concerned.

It is not disputed that in the case now before us, Commissioner Matsey's acts came within the scope of powers granted by § 33–4–1–74.4. The Smith dissolution proceeding has been handled from its inception in all respects by Matsey. Prior to our issuance of the temporary writ of mandate, Judge McLaughlin was not involved in the Smith dissolution.

The legislature also has passed very similar statutes applicable to the circuit courts of Vanderburgh and St. Joseph Counties. In fact, the Vanderburgh and St. Joseph Circuit Courts and their respective judges have petitioned for leave to appear as amici curiae, and have tendered briefs as amici in defense of the constitutionality of the statutes applicable to their counties. Ind. Code §§ 33–4–1–82.1 *et seq.* (Burns Supp. 1980) provides for the appointment of a master commissioner for the Vanderburgh Circuit Court, and establishes his powers and duties. These provisions are very similar in language, and identical in effect, to the statutes pertaining to Starke County. The key language for our purposes is found in §§ 33–4–1–82.1 and 33–4–1–82.2. These sections state:

"*Vanderburgh County—Master commissioner — Appointment — Qualifications.*—The judge of the Vanderburgh Circuit Court may appoint a master commissioner, who must be a competent attorney in good standing and a resident of the county after his appointment. The master commissioner's appoint must be in writing. The master commissioner continues in office until removed by the judge.

§ 33–4–1–82.2. *Vanderburgh County— Powers and duties of master commissioner.*—(a) A master commissioner of the Vanderburgh Circuit Court may administer all oaths and affirmations required by law, take and certify affidavits and depositions, and issue subpoenas for witnesses whose testimony is to be taken before him. The master commissioner has the same power to compel the attendance of witnesses and to punish contempts as the judge of the court has. The master commissioner may conduct preliminary hearings in criminal matters and issue search warrants and arrest warrants and fix bond thereon.

(b) If empowered by the judge of the court, the master commissioner may exercise full jurisdiction over any probate matters, civil matters, or criminal matters, and he may enforce court rules. However, only the judge may exercise jurisdiction over juvenile matters."

In addition, § 33–4–1–82.4, like its Starke County counterpart, provides that the power of judicial mandate shall remain in the regular judge of the Vanderburgh Circuit Court. These provisions were passed by our legislature in 1977, as part of the same enactment which created the position of Starke Circuit Court Master Commissioner. Acts 1977, P.L. 314, §§ 8–13, p. 1452.

Ind. Code § 33–4–1–75.1 concerns the appointment of a master commissioner for the St. Joseph Circuit Court, and lists his powers and duties. Subsections (a), (b) and (c) provide:

"*St. Joseph County—Master Commissioner.*—(a) Subject to subsection (j), the judge of the St. Joseph circuit court may

appoint a master commissioner, who must be a competent attorney in good standing and a resident of the county after his appointment. The master commissioner's appointment must be in writing. The master commissioner continues in office until removed by the judge.

(b) A master commissioner of the St. Joseph circuit court may administer all oaths and affirmations required by law, take and certify affidavits and depositions, and issue subpoenas for witnesses whose testimony is to be taken before him. The master commissioner has the same power to compel the attendance of witnesses and to punish contempts as the judge of the court has. The master commissioner may conduct preliminary hearings in criminal matters and issue search warrants and arrest warrants and fix bond thereon.

(c) If empowered by the judge of the court, the master commissioner may exercise full jurisdiction over any probate matters, civil matters, or criminal matters, and he may enforce court rules."

Notably, in contrast to the parallel provisions applying to Starke and Vanderburgh Counties, there is nothing in subsection (b), supra, which restricts the St. Joseph Circuit Court Commissioner's powers to act in juvenile matters.

A second distinction between the provisions applying to St. Joseph County and those applying to Starke and Vanderburgh Counties is found in § 33–4–1–75.1(d). This subsection provides:

"(d) The judge of the court may limit any of the rights or powers of the commissioner specified in subsection (b), (c) or (e), and the judge may specifically determine the duties of the commissioner, within the limits established in subsections (b), (c) and (e)."

A practical construction of all of the statutes involved affecting these three counties, however, indicates that the circuit court judges in each of the counties could, under these statutes, restrict the powers of the commissioner in the fashion stated in § 33–4–1–75.1(d).

Although not crucial for our purposes, a third difference between the statute controlling the St. Joseph Circuit Court Commissioner and those directing such operations in Starke and Vanderburgh Counties is found in subsections (j) and (k). These subsections provide that no appointment of a commissioner shall occur after December 31, 1986, and that the position of master commissioner shall expire on January 1, 1987. No such limitations are found in the statutes referring to Starke and Vanderburgh Counties. Finally, § 33–4–1–75.1(f) provides that the St. Joseph Circuit Court Master Commissioner, like his counterparts in Starke and Vanderburgh Counties, shall have no power of judicial mandate.

Thus, it is clear that the legislature has passed substantially similar statutes providing for the appointment of master commissioners in Starke, Vanderburgh and St. Joseph Counties. Relator here, of course, challenges only the sections pertaining to Starke County. However, due to the importance of this challenge and the obvious effect our result will have on the statutes which apply to Vanderburgh and St. Joseph Counties, we have granted the petitions for leave to appear amici curiae and will pass on the constitutionality of their relevant statutes as well.

The language and effect of these statutes touch upon several constitutional provisions which relate to the operation of the courts of this State. Article seven, section one provides:

"The judicial power of the State shall be vested in one Supreme Court, one Court of Appeals, Circuit Courts, and such other courts as the General Assembly may establish."

Article seven, section seven states:

"The State shall, from time to time, be divided into judicial circuits; and a Judge for each circuit shall be elected by the voters thereof. He shall reside within the circuit and shall have been duly admitted to practice law by the Supreme Court of Indiana; he shall hold his office for a term of six years, if he so long behaves well."

In addition, article seven, section eight provides that the circuit courts "shall have such civil and criminal jurisdiction as may be prescribed by law." Further, article two, section fourteen establishes the date for general elections to be held, with an additional provision that the legislature may establish separate elections for judges. Finally, article five, section eighteen states:

"When, during the recess of the General Assembly, a vacancy shall happen in any office, the appointment to which is vested in the General Assembly; or when, at any time, a vacancy shall have occurred in any other State office, or in the office of Judge of any court; the Governor shall fill such vacancy, by appointment, which shall expire, when a successor shall have been elected and qualified." [emphasis added]

When these various constitutional provisions are read together, a number of important principles emerge which are relevant to the case now before us. The State Constitution provides for the creation of a Supreme Court, Court of Appeals and Circuit Courts. The power to create additional courts of general jurisdiction lies in our legislature, and the legislature may establish such courts as it deems appropriate. *See Elkhart County Board Comm. v. Albright,* (1907) 168 Ind. 564, 81 N.E. 578; *Shoultz v. McPheeters,* (1881) 79 Ind. 373. The judges of such courts must be elected, or, if a vacancy occurs in the office of such judge, that vacancy shall be filled by appointment by the governor, until a successor is elected. *See In re Petition for Appointment of Magistrates of Beech Grove,* (1940) 216 Ind. 417, 24 N.E.2d 773; *State ex rel. Gleason v. Gerdink,* (1909) 173 Ind. 245, 90 N.E. 70.

In *Shoultz v. McPheeters, supra,* we were presented with a situation similar to the one we face here. Our legislature, in 1881, passed a series of statutes pertaining to the appointment of master commissioners. Acts 1881 (Spec.Sess.) ch. 38 was entitled: "An act concerning proceedings in civil cases." This enactment, of course, established the code of civil procedure. Section

412 of chapter 38 required circuit court judges to appoint at least one master commissioner, and empowered them to appoint as many as they deemed necessary to assist them. Sections 415 and 418 established the limited powers that such a commissioner would have:

"Sec. 415. Such master commissioners are empowered to administer oaths and affirmations which are required by law; to take and certify affidavits and depositions; to issue subpoenas for witnesses whose testimony is to be taken before them, and shall have the same power to compel the attendance of witnesses and punish contempts, as is given to Justices of the Peace.

. . . . .

Sec. 418. Such master commissioners shall have the powers and discharge the duties herein mentioned, which have heretofore been performed by masters in chancery, so far as the same may be consistent with existing laws."

The statute at issue in *Shoultz v. McPheeters,* however, was § 419 of chapter 38. That section provided:

"Whenever the office of judge shall become vacant, or, in case of the absence of all the judges competent to act, or whenever such judge or judges, by reason of interest, is or are incompetent to act, or unable by reason of sickness, such master commissioner shall have all the power of any judge in vacation, to grant restraining orders, injunctions, writs of habeas corpus, and writs of exeat, and to appoint receivers, and hear and determine all motions and matter, and make all orders concerning the same."

In the *Shoultz* case, the appellant had applied to a master commissioner for a writ of habeas corpus. The statute quoted above clearly allowed for such a petition to be made to the master commissioner. This section was challenged as a delegation of judicial powers beyond the scope permitted by the Indiana Constitution.

In answering this contention, this Court first noted the origin and independent nature of judicial power. Article seven, sec-

tion one of the Indiana Constitution, at the time of the *Shoultz* case, provided:

> "The judicial powers of the State shall be vested in a Supreme Court, circuit courts, and such other courts as the General Assembly may establish."

We noted that our constitution's use of the word "court" means "judicial tribunals presided over by a judge or judges." *Shoultz v. McPheeters, supra,* 79 Ind. at 376. Thus, we concluded that "[t]hroughout all the constitutional provisions runs the controlling idea that a court cannot exist without a judge. The legislature may establish courts, but cannot vest the judicial power in any other tribunal." *Id.*

█ In light of this premise, it was necessary in *Shoultz* to further discern what acts and powers are, in fact, judicial in nature. We stated:

> " 'Judicial acts, within the meaning of the Constitution of Indiana, are such as are performed in the exercise of judicial power. But the judicial power of this State is vested in courts. A judicial act, then, must be an act performed by a court, touching the rights of parties, or property, brought before it by voluntary appearance . . . .' "

*Id.* at 377, *quoting Flournoy v. City of Jeffersonville,* (1861) 17 Ind. 169, 173. We further described judicial acts, as distinguished from non-judicial acts, in this fashion:

> "The power to hear causes and report facts or conclusions to the court for its judgment is not judicial within the meaning of the Constitution.
>
> .   .   .   .   .
>
> 'It is the inherent authority not only to decide, but to make binding orders or judgments, which constitutes judicial power; and the instrumentalities used to inform the tribunal, whether left to its own choice or fixed by law, are merely auxiliary to that power, and operate on persons or things only through its actions, and by virtue of it.' "

*Id.* at 378, *quoting Underwood v. McDuffee,* (1867) 15 Mich. 361, 368. Clearly, in light of these principles, a master commissioner can act as an "instrumentality" to inform and assist the court by conducting hearings and reporting facts or conclusions to the court, but only the court has "the inherent authority not only to decide, but to make binding orders or judgments . . . ." *Id. See* Ind.R. Tr.P. 53. *Cf.* Ind. Code § 34–1–25–1 *et seq.* (Burns 1973), *repealed by* Acts 1969, ch. 191, § 3, p. 546.

Yet, the statute at issue in *Shoultz* unquestionably purported to confer authority on master commissioners to exercise powers which are strictly judicial in quality. Section 419 clearly stated that a master commissioner was to have

> "all the power of any judge in vacation, to grant restraining orders, injunctions, writs of habeas corpus, and writs of ne exeat, and to appoint receivers, and hear and determine all motions and matters, and make all orders concerning the same."

This Court asserted:

> "A master commissioner is not a court, and judicial duties which courts only can exercise, can not be conferred upon him. This seems so plain upon principle that the support of authority is not needed."

*Shoultz v. McPheeters, supra,* 79 Ind. at 376. We concluded, in light of the constitutional principles stated above, that "judicial powers can not be vested in officers, such as master commissioners, appointed by judges of the courts." *Id.* at 375. Thus, section 419, quoted above, was held to be unconstitutional in *Shoultz.*

In striking down § 419, we distinguished §§ 415 and 418, which conferred to master commissioners only non-judicial powers. The performance by a master commissioner of the types of acts found in §§ 415 and 418 does not amount to the exercise of judicial power by a body other than a constitutional court created by our legislature.[1]

---

1. Notably, §§ 415 and 418 remained a part of our law until recently. Ind. Code §§ 34–1–25–1 —34–1–25–3 (Burns 1973) represented, with

certain amendments, the codified version of §§ 412, 415, and 418 of Acts 1881 (Spec.Sess.) ch. 38. With the adoption of the Indiana Rules

There are striking and compelling similarities between the *Shoultz* case and the case now before us. The statutes in question here, pertaining to Starke, Vanderburgh and St. Joseph Counties, attempt to confer similarly broad powers on the master commissioners of the respective circuit courts. The sections in question authorize the master commissioner, if so empowered by the circuit court judge, to, inter alia, "exercise full jurisdiction over any probate matters, civil matters, or criminal matters." Potentially, the only limitations on his power concern juvenile matters and matters of judicial mandate. *See, e. g.,* §§ 33–4–1–74.-4; 33–4–1–74.6.

Further, these statutes provide vastly greater opportunities for the master commissioner's exercise of such powers than did the statute in question in *Shoultz v. McPheeters, supra.* In *Shoultz,* the statute permitted the commissioner to exercise jurisdiction only when the regular judge was absent, incompetent, or unable to act by reason of illness. The statutes now before us, however, authorize the commissioner to perform his duties on a full-time basis; he acts independently of the regular judge, and does not depend on the regular judge's absence or inability to act for the statutorily-given authorization to perform various judicial tasks.

■ Therefore, on the authority of *Shoultz v. McPheeters,* we conclude that

§ 33–4–1–74.4(b), § 33–4–1–75.1(c), and § 33–4–1–82.2(b) are constitutionally infirm because they attempt to authorize the performance of plainly judicial acts by the master commissioner. Such judicial acts, by our well established principles, may be performed only by judges. "[J]udicial powers cannot be vested in officers, such as master commissioners, appointed by the judges of the courts." *Shoultz v. McPheeters, supra,* 79 Ind. at 375.

Also underlying our decision here are article five, section eighteen, and article seven, section one, of our Constitution. The former provision clearly states that a vacancy in the office of judge of any court is to be filled by appointment by the governor, such appointment to expire "when a successor shall have been elected and qualified." This provision applies to courts of general jurisdiction. *In re Petition for Appointment of Magistrates of Beech Grove,* (1940) 216 Ind. 417, 24 N.E.2d 773; *State ex rel. Gleason v. Gerdink,* (1909) 173 Ind. 245, 90 N.E. 70. The statutes under consideration, by their effect, create offices with virtually the same authority and powers as constitutional courts of general jurisdiction. *See* Ind.Const. art. 7, § 1; art. 5, § 18. The master commissioner of such a "court" is given virtually unlimited powers to act in a clearly judicial capacity; the statutes extend his authority as far as that of the circuit court judge, except concerning juve-

---

of Civil Procedure in 1969, these sections, along with many other provisions of the Civil Code of 1881, were repealed effective January 1, 1970. Acts 1969, ch. 191, § 3, p. 546 (approved March 13, 1969). However, Acts 1969, ch. 433, §§ 1–3, p. 1824 (approved March 15, 1969), specifically amend §§ 412, 415 and 418. Moreover, § 6 of chapter 433 states that "an emergency exists for the immediate taking effect of this action," and, therefore, that these sections shall be in full force and effect from and after their passage. Thus, these amendments took effect on March 15, 1969; the repealing act, by its terms, did not take effect until January 1, 1970. Clearly, then, §§ 412, 415 and 418, codified as §§ 34–1–25–1—34–1–25–3, were in effect from March 15, 1969 until January 1, 1970.

However, we believe the legislature intended to supercede §§ 34–1–25–1—34–1–25–3. The Indiana Rules of Civil Procedure undertook to totally revise and update our procedural rules.

Thus, many sections which had been part of the 1881 civil code were repealed. *See* Acts 1969, ch. 191, § 3, p. 546. One of the rules adopted as part of the Indiana Rules of Civil Procedure is Trial Rule 53, which covers the same general subject matter as §§ 34–1–25–1—34–1–25–3. The act which repealed the latter statutes was approved before the amendments, but took effect after the amendments. Thus, the sections were validly amended, because they were still in effect when amended. Nevertheless, they were specifically repealed by an act which took effect subsequent to the amendments. Therefore, while we maintain our approval of the type of master commissioner powers found in §§ 34–1–25–1—34–1–25–3, we recognize that those particular sections have been repealed. *See* Ind.R.Tr.P. 53. *See generally State v. Bridenhager,* (1972) 257 Ind. 699, 279 N.E.2d 794.

nile and mandate matters. These two limitations on the commissioner's powers do not circumscribe and meaningfully limit his authority and jurisdiction to the point where we could consider his office as less than equivalent to a "constitutional court" having a "general and state character." *In re Petition for Appointment of Magistrates of Beech Grove, supra*, 216 Ind. at 425, 24 N.E.2d at 776. Further, his actions in a given case are subject to no direct control, oversight or review by the circuit judge. In spite of this grant of broad powers, a master commissioner under these statutes is neither elected by the voters nor appointed by the governor; he is appointed by the circuit court judge and serves at his pleasure.

Thus, we conclude these statutes are constitutionally deficient in this respect: they establish an office having authority virtually equivalent to that of a constitutional court of general jurisdiction. Insofar as they attempt to establish additional courts for the respective counties, the statutes reflect a proper exercise of legislative authority. Ind.Const. art. 7, § 1. *See Elkhart County Bd. Comm. v. Albright*, (1907) 168 Ind. 564, 81 N.E. 578. *See also* Ind.Const. art. 7, § 8. However, the *judge* of such a "court," which, by virtue of the powers given to them by the statutes, is what the master commissioner would be, must be elected by the voters or, if a vacancy occurs in that office, appointed by the governor. Our constitution clearly reflects the intent to maintain as elected officers the judges of courts having general jurisdiction. Ind. Const. art. 2, § 14; art. 5, § 18; art. 7, § 7; *In re Petition for Appointment of Magistrates of Beech Grove, supra; State ex rel. Gleason v. Gerdink, supra; Shoultz v. McPheeters, supra.*

Stated conversely, the appointment of a master commissioner by a circuit court judge is not necessarily constitutionally improper. However, a commissioner who is selected in this manner must have substantially fewer powers and duties than those granted by the statutes in question. Under the constitutional principles outlined above, an appointed officer of this type must have

significantly limited jurisdiction, or his authority must be confined to the performance of non-judicial acts. *In re Petition for Appointment of Magistrates of Beech Grove, supra; State ex rel. Gleason v. Gerdink, supra; Shoultz v. McPheeters, supra.* See Ind.R.Tr.P. 53; Ind. Code § 34–1–25–1 *et seq.* (Burns 1973) *cited with approval in Shoultz v. McPheeters, supra, repealed by* Acts 1969, ch. 191, § 3, p. 546. The statutes in question clearly attempt to grant judicial powers and authority beyond such constitutional limitations. Therefore, we declare the following sections unconstitutional: Ind. Code §§ 33–4–1–74.4(b); 33–4–1–82.-2(b); and 33–4–1–75.1(c) (Burns Supp. 1980).

■ We realize our holding here will raise questions concerning judgments already entered by the master commissioners in these counties. In *Gordy v. State*, (1974) 262 Ind. 275, 283, 315 N.E.2d 362, 367, this Court disposed of a similar question with the following language:

"The Commissioner did not merely usurp this authority and set up a mock court. He heard the case in the Lake Criminal Court, which clearly had jurisdiction over the subject matter as well as over the person of defendant. The Commissioner was acting as judge, a duty he clearly may assume under the statute if his appointment is procedurally correct. Both parties submitted to his authority as a judge and neither questioned this authority until this appeal was initiated. Thus, he was operating under color of authority, and served as a judge de facto if not as a judge de jure. His authority as a judge de facto may not be raised on appeal for the first time. *Evans v. Rutherford* (1921) 76 Ind.App. 366, 371, 131 N.E. 55; *Perry v. Pernet*, (1905) 165 Ind. 67, 70, 74 N.E. 609; *Lillie v. Trentman*, (1891) 130 Ind. 16, 20–21, 29 N.E. 405; *Crawford v. Lawrence*, (1900) 154 Ind. 288, 290, 56 N.E. 673; *Pattison v. Hogston*, (1927) 90 Ind.App. 59, 68, 157 N.E. 450, 158 N.E. 516; *Wallace v. Village of Manchester*, (6th Cir. 1970) 434 F.2d 241,

242; *Norton v. County of Shelby*, (1886) 118 U.S. 425, 441–42, 6 S.Ct. 1121, 1125, 30 L.Ed. 178."

Just as in *Gordy v. State*, the commissioners here have acted as de facto judges. Therefore, this holding shall have only prospective application, and shall apply to or affect only cases which have not yet reached final judgment or have not yet had a ruling on the motion to correct error.

As a point of clarification, we emphasize that our holding and opinion here do not affect the validity of or current practice under: (Ind. Code § 31–6–9–2 (Burns 1980) Repl.), concerning juvenile court referees; Ind. Code § 29–2–2–1 *et seq.* (Burns Supp. 1980), concerning probate commissioners; Ind.R.Tr.P. 53, concerning the appointment of masters in individual cases; or Ind.R. Sm.Cl. 14, relating to the appointment of commissioners in small claims cases. *See In re Public Law No. 305 and Public Law No. 309*, (1975) 263 Ind. 506, 334 N.E.2d 659. It is our opinion that those statutes and rules do not grant those officers greater powers than are constitutionally permissible.

██ Finally, we must determine the appropriate disposition of the Starke Circuit Court proceedings from which this original action arose. The record before us reveals that petitioner Roger Lee Smith filed his *praecipe and notice* under Trial Rule 53.1 more than thirty days after the filing of his motion to strike. The record also shows that the motion to strike was not ruled upon by the judge within thirty days, as required under that rule. Therefore, the Starke Circuit Court Clerk shall withdraw the submission of the *Smith* case and proceed accordingly under Trial Rule 53.1, whereupon this Court shall appoint a special judge for these proceedings. In this case, petitioner Smith has the right to have these dissolution proceedings adjudged by the special judge. Writ of Mandate made permanent.

Judgment accordingly.

All Justices concur.