Kenneth **WOODFORK**, Appellant–Defendant,

v.

**STATE** of Indiana, Appellee–Petitioner.

No. 49A02–9018–CR–363.

Court of Appeals of Indiana, Second District.

June 22, 1992.

S. Sargent Visher, Choate Visher & Haith, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee-petitioner.

BUCHANAN, Judge.

## CASE SUMMARY

Appellant-defendant Kenneth Woodfork (Woodfork) appeals his convictions for two counts of forgery[1], both as Class C felonies and theft[2], a Class D felony, claiming that the trial court erred by refusing to grant a continuance so a defense witness could obtain a document and that the evidence was insufficient to support the convictions.

We affirm.

## FACTS

The facts which most support the convictions show that on September 19, 1989, Woodfork met Dalonda Clay (Clay) at a liquor store in Indianapolis. As they drove to Clay's apartment, Woodfork told her he had obtained some Richmond State Hospital Employees Credit Union checks where he worked. When they arrived at the apartment, Clay gave Woodfork an American Express picture identification card. Woodfork cut out Clay's photograph and placed it on a white piece of paper which had typed on it "Richmond Hospital" and "Rochelle Jones". Woodfork then inserted the photograph and paper into a plastic overlay and sealed it with a hot iron. Finally, Woodfork punched a hole in the card and inserted a clip so it would look like a Richmond State Hospital identification badge.

Woodfork and Clay drove to the Check Exchange in Indianapolis, where Clay attempted use the manufactured identification card and other falsified identification to cash a Richmond State Hospital check for $5,000 that was made out to "Rochelle Jones" and signed by "Mary Hunt." The owner of the Check Exchange, Larry Skeen (Skeen), went to a back room and called Richmond State Hospital to verify the check. Upon learning from Mary Hunt that she had not signed the check and the check had been among those stolen from the credit union, Skeen called the police.

Clay was still in the store when the sheriff's deputies arrived. After some questioning by the officers, Clay admitted to having attempted to cash the check using false identification and gave a physical description of her accomplice, Woodfork. Skeen informed the deputies that he had seen someone matching the description just leaving the store. A search proved fruitless, however, and the officers took Clay to the police station.

Skeen later saw someone matching the description of Woodfork walking in front of the Check Exchange. Skeen called the police and told them he was going to follow the suspect. Using the telephone in his car, Skeen kept the deputies apprised of Woodfork's location until they could effect an arrest. At the station, Clay identified Woodfork as her accomplice.

Woodfork was charged with two counts of forgery and one count of theft. A jury

---

1. Ind.Code 35–43–5–2.

2. IC 35–43–4–2.

trial was held on November 16, 1989, which ended in a mistrial. A second jury trial, presided over by Master Commissioner Craig Wellnitz was held on February 8, 1990, at which Woodfork was convicted on all three counts. Commissioner Wellnitz sentenced Woodfork to two concurrent eight year sentences on the forgery charges and four years for the theft conviction and ordered that the sentence for the theft conviction be served consecutively to the eight year sentences.

As there was no evidence in the record that final judgment on the sentence was entered by the regular judge of the court, the Honorable John Barney, Jr., an order signed by the Chief Judge of this court suspended consideration of the appeal and Judge Barney was ordered "to cause sentence to be entered by a proper judicial officer...."[3] Soon thereafter Judge Barney complied with the order.

### ISSUES

Woodfork now appeals, raising two issues, which we restate and reorder as:

1. Did the trial judge err in refusing to continue the trial to permit a defense witness to obtain a document which, Woodfork maintains, would have corroborated his testimony?

2. Was the evidence sufficient to support the convictions?

### DECISION

■ ISSUE ONE—Did the trial judge err in refusing to continue the trial to permit a defense witness to obtain a document which, Woodfork maintains, would have corroborated his testimony?

PARTIES' CONTENTIONS—Woodfork argues that the admission of a sign-in log would have corroborated his alibi claim and that the court abused its discretion in refusing to grant a continuance so the log could be obtained. The State counters that Woodfork was not harmed by the denial of the continuance because a witness was permitted to testify regarding the contents of the log including the time Woodfork had signed out on the day of the forgery.

CONCLUSIONS—Woodfork was not prejudiced by the court's refusal to continue the case.

At trial, Woodfork sought to introduce through Craig Thomas (Thomas), an employee of Riverside Residential Center (the Center), the place where Woodfork was living on September 19, 1989, a copy of the sign-out log, which Woodfork claims would have shown that he was at the Center during the time he was supposedly involved in the forgery. However, as the Center had closed for the day, Thomas could not obtain the log until the day after the trial. Woodfork's request that the court continue the trial to the following day so the log could be entered into evidence was denied.

■ Whether to grant a continuance falls within the sound discretion of the trial court and will not be reversed on appeal absent a showing that the trial court's discretion has been abused. *Conner v. State* (1991), Ind., 580 N.E.2d 214. To meet this burden, a defendant must demonstrate that he was prejudiced as a result of the court's denial of the continuance. *Parr v. State* (1987), Ind., 504 N.E.2d 1014.

Although the trial court's ruling prevented Woodfork from entering the sign-out log, nonetheless he was permitted to call as a witness Thomas who indicated that he had reviewed the sign-out log prior to the trial and testified regarding the time Woodfork had signed out on February 19, 1988. Woodfork has not demonstrated how he was prejudiced by the court's denial of his motion for continuance to obtain the sign-out log. *Parr, supra.*

ISSUE TWO—Was the evidence sufficient to support the convictions?

PARTIES' CONTENTIONS—Woodfork contends that the evidence was insufficient to support his convictions because the information provided that he was accused of

---

**3.** In several cases this court has suspended the consideration of an appeal taken from a master commissioner's ruling and ordered the judge of the trial court to enter final judgment on the case. *Green v. State* (1989), Ind.App., 540 N.E.2d 130; *Eakins v. State* (1985), Ind.App., 482 N.E.2d 1157; *Ingmire v. Butts* (1974), 160 Ind.App. 575, 312 N.E.2d 885.

making an official Richmond State Hospital identification card so that it appeared like it was made by the bearer of the card, Clay, who was pretending to be Rochelle Jones. In addition, Woodfork claims the evidence was insufficient because the court's judgment rested solely on the testimony of Clay who had repeatedly lied during the investigation into the matter and while under oath. The State responds that Woodfork was not entitled to reversal based on a variance between the proof offered at trial and the allegation contained in the information because the information, which contained a clerical error, was not likely to mislead Woodfork or place him in the position of being subject to double jeopardy. As to the reliability of Clay's testimony, the State argues that Woodfork is simply wanting to reweigh the evidence.

CONCLUSION—The evidence was sufficient to support the convictions.

■ Woodfork first claims that the evidence was insufficient to show, as alleged in Count I, that he had falsified a Richmond State Hospital identification badge so that it looked like it was made by "Rochelle Jones":

"Count I

[Kenneth Woodfork] did unlawfully and with intent to defraud, make a written instrument, to wit: A RICHMOND STATE HOSPITAL EMPLOYEE IDENTIFICATION CARD, said instrument being of the following tenor:

[identification card was reproduced here]

in such a manner that said written instrument purposed to have been made by another person, to-wit: ROCHELLE R. JONES, all of which is contrary to the form of the statute...."

*Record* at 2–3.

The information should have alleged that the employee card was falsified to look like it was made by Richmond State Hospital rather than "Rochelle Jones." This is an obvious clerical error, however, and does not nullify Woodfork's conviction under the forgery count. The purpose of an information is to advise a defendant of the particular crime charged so he can prepare a

defense. *Cash v. State* (1990), Ind., 557 N.E.2d 1023. A variance between a charging instrument and the proof offered at trial is only fatal when it misleads the defendant in the preparation of his defense or is of such a degree as to likely place him in danger of double jeopardy. *Grassmyer v. State* (1981), Ind., 429 N.E.2d 248. Woodfork has shown neither.

■ Finally, Woodfork claims that the evidence is insufficient because the State's case depended on the testimony of Clay who had lied repeatedly to the arresting officers and while under oath. Clay's inconsistencies and untruths, however, were known to the jury which is charged with the responsibility of assessing witness credibility and weighing all the evidence presented at trial. *Carter v. State* (1987), Ind., 512 N.E.2d 158.

In addition, Clay's testimony was supported by other evidence such as Woodfork's access to the checks and check writing machine, *record* at 298–99, 313, the testimony of a handwriting analyst who noted "excellent similarities" between the forged signature on the checks and Woodfork's handwriting, *record* at 361, and the testimony of a fingerprint examiner who identified Woodfork's fingerprint on the white paper inside the cellophane covering the falsified employee badge. *Record* at 377, 380. The evidence was not insufficient. *See Clark v. State* (1990), Ind., 562 N.E.2d 11, cert. denied — U.S. —, 112 S.Ct. 425, 116 L.Ed.2d 445 (1991).

Judgment affirmed.

MILLER, J., concurs.

SULLIVAN, J., concurs in result with opinion.

SULLIVAN, Judge, concurring in result.

This appeal began as a challenge to a purported final judgment of conviction out of Marion Superior Court, Criminal Division Three. However, when the appeal was fully briefed and was submitted to the Second District of the Court of Appeals for decision, there was no final appealable judgment.

In the case before us, it clearly appears that Master Commissioner Craig Wellnitz purported to enter the judgment. Record at 113. The sentencing was not approved by the Honorable John Barney, Jr., the regular judge of the court. The record shows that Mr. Wellnitz continued to preside after trial. Although the court reporter indicated that the matter was before the Honorable John Barney, the order appointing pauper appellate counsel was clearly issued by Craig Wellnitz as Commissioner.

Various panels of the Court of Appeals have attempted, in numerous memorandum decisions, as well as in published opinions, to remain consistent and, by dismissing purported appeals, to honor the clear and unmistakable dictate of our Supreme Court in *State ex rel. Smith v. Starke Circuit Court* (1981) 275 Ind. 483, 417 N.E.2d 1115. *See Landers v. State* (1991) 2d Dist.Ind. App., 577 N.E.2d 990. Under the circumstances as they existed in this cause prior to February 21, 1992, a dismissal of the purported appeal was mandated.

On the latter date, however, an order signed by Chief Judge Ratliff was improvidently issued. It reads as follows:

"It becoming apparent to the Court after an examination of the record of the proceedings in this appeal that judgment was purportedly entered by a Master Commissioner of the trial court, the Court now finds that this Court should suspend consideration of this appeal and this cause should be remanded to the Marion Superior Court, Criminal Division, Room 3, for the purpose of the entry of sentence by a proper judicial officer.

IT IS THEREFORE ORDERED as follows:

1. This Court now suspends consideration of this appeal and remands this cause to the Marion Superior Court, Criminal Division, Room 3, with instruction to the Honorable John R. Barney, Jr., Judge thereof, to cause sentence to be entered by a proper judicial officer, either by himself or by a duly qualified pro tem judge;

2. The Clerk of this Court is ordered to send copies of this Order to:
    The Honorable John R. Barney, Jr.
    Judge, Marion Superior Court
    Criminal Division, Room 3
    W–242, City–County Building
    Indianapolis, Indiana 46204
    The Honorable Faye I. Mowery
    Clerk of Marion County
    W–122, City–County Building
    Indianapolis, Indiana 46204
in addition to sending copies hereof to all counsel of record;

3. The Clerk of Marion County is ordered and directed to file a copy of this Order and thereafter to cause the same to be spread of record in cause number 49G03–9009–CF–105804 of the Marion Superior Court, Criminal Division, Room 3;

4. The Honorable John R. Barney, Jr. is ordered and directed to cause sentence to be entered by a proper judicial officer and thereafter to cause a certified copy of that action to be filed with the Clerk of the Court of Appeals of Indiana no later than thirty (30) days from the date of this Order.

ORDERED this 21st day of February, 1992."

Subsequently, on March 19, 1992, a corrected "Order Entering Judgment of Conviction" was filed with the Clerk of the trial court. That course of action was contemplated by the February 21 order of this court. For this reason I am compelled to conclude that appellant should not be penalized by action which this court has authorized, albeit in error.[1]

Notwithstanding the cases cited by the majority in its footnote 3 at page 470, we are left with a peculiar procedural chronology in the case. The filing of the praecipe,

---

**1.** An order directing the regular judge "to cause sentence to be entered" presupposes that the regular judge or a duly appointed pro tem will in fact approve the recommendations made by the Master Commissioner. It is, I believe, presumptuous for us to assume that a proper judicial officer is a mere rubber stamp. The proper judicial officer must and does retain the discretion and the prerogative to accept or reject the recommendations of the Commissioner.

the filing of the record as certified on January 29, 1991 by Craig Wellnitz as Master Commissioner, and the filing of the briefs all antedate the entry of judgment. One might question whether the cart has been placed before the horse in such a manner as to destroy both the vehicle and its source of locomotion.

In any event, because of the February 21, 1992 order, I have considered the merits of the "appeal" and I concur in the affirmance of Woodfork's three convictions.