Timothy SMITH, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 49A02–9404–PC–240.

Court of Appeals of Indiana,
Second District.

Dec. 7, 1994.

Transfer Denied Feb. 9, 1995.

Susan K. Carpenter, Public Defender of Indiana, Stephen T. Owens, Deputy Public Defender, Indianapolis, for appellant-petitioner.

Pamela Carter, Atty. Gen. of Indiana, Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee-respondent.

**OPINION**

FRIEDLANDER, Judge.

Terry Smith was convicted of Burglary[1]

---

1.  Ind.Code 35–43–2–1.

and Attempted Rape,[2] both class A felonies, after pleading guilty, and appeals the denial of his petition for post-conviction relief. Smith presents the following restated issues for review:

> I. Were Smith's convictions a nullity because of a master commissioner's participation in the proceedings?

> II. Were Smith's guilty pleas invalid because defense counsel misinformed Smith of the sentence he would receive?

We affirm.

The facts favorable to the judgment are that on October 9, 1984, Smith broke into the apartment of Richard and Debra Carvalho, intending to rape Debra. When the Carvalhos returned home, Smith ordered the couple into the bedroom at gunpoint and ordered Debra to disrobe. As Smith started to disrobe, he laid the gun on the bed and a brief struggle ensued. Richard was able to gain control of the gun and Smith fled from the apartment. Smith was apprehended by police a short time later and was positively identified by the Carvalhos. Smith later pled guilty to burglary and attempted rape.

The December 14, 1984 guilty plea hearing was conducted by Jay Haggarty, acting as master commissioner. Haggarty took the plea under advisement and set the matter for sentencing. The sentencing hearing was held on January 10, 1985 and was conducted by Master Commissioner Haggarty. Haggarty accepted the guilty plea and imposed sentence as follows:

> "I think the aggravating circumstances outweigh the mitigating circumstances and on that basis from the thirty[-]year presumptive sentence the Court adds twenty years on Count One [burglary]—for fifty years. On Count Two the Court once again finds aggravating circumstances outweigh the mitigating circumstances, ...

> and on that basis the thirty[-]year presumptive sentence—twenty years will be added. Fifty years on each count to run concurrently...." *Record* at 197.

I.

Smith contends that his convictions are invalid because a master commissioner presided over the guilty plea and sentencing hearings. It is undisputed that Haggarty did not have authority under statutes then in effect to preside over the proceedings and enter judgment. We conclude, however, that Smith has waived the error by presenting this issue for the first time on appeal.

In *Short v. State* (1982), Ind., 443 N.E.2d 298, the defendant was found guilty following a jury trial and subsequently was sentenced. A master commissioner presided over both phases of the proceedings. Upon appeal, the defendant claimed that the proceedings were a nullity because the record did not contain a valid appointment for the master commissioner. The defendant did not object to the master commissioner's authority, however, until commencing the appeal. Our Supreme Court determined that the issue was waived, stating:

> "[T]he appellant's objection is not that the court lacked subject matter jurisdiction to hear the case, but rather that the presiding authority in the court had no authority to so act. [In *Gordy v. State* (1974), 262 Ind. 275, 315 N.E.2d 362, a similar case, we held] as follows:

> > 'Even if the Commissioner's authority was improper in this case ..., Defendant's conviction may not be set aside. The Commissioner did not merely usurp this authority and set up a mock court. He heard the case in the Lake Criminal Court, which clearly had jurisdiction over the subject matter as well as over the person of the Defendant. The Commissioner was acting as a judge, a duty he clearly may assume under statute if his appointment is procedurally correct. Both parties submitted to his authority as a judge and neither questioned this authority until this appeal was initiated. Thus, he was operating under color of authority, and served as judge de facto if not as a judge de jure. His authority as a judge de facto may not be raised on appeal for the first time.'

**2.** Ind.Code 35–41–5–1 (Attempt) and Ind.Code 35–42–4–1 (Rape).

This reasoning is applicable in the case at bar. Appellant tendered no objection to the authority of the Master Commissioner in this case to perform the functions of the trial judge until initiation of this appeal; hence any claim of error based on allegedly improper assumption of authority is waived." *Short, supra,* 443 N.E.2d at 309–10.

As in *Short,* Smith was represented by counsel and submitted to the hearing before Master Commissioner Haggarty without objecting to Haggarty's authority. In so doing, Smith waived the issue of whether Haggarty's participation rendered the proceedings a nullity. *Short, supra; see also Morlan v. State* (1986), Ind., 491 N.E.2d 1001.

## II.

Smith claimed that he was misinformed by his trial counsel that by pleading guilty, Smith would receive a sentence of between 20 and 30 years. He claimed that he would not have pled guilty if had he known he was eligible to receive a 50–year sentence.

■ In order to prevail in a post-conviction challenge based upon an allegedly invalid guilty plea, a defendant must demonstrate grounds for reversal by a preponderance of the evidence. *Allen v. State* (1986), Ind., 498 N.E.2d 1214. A defendant must demonstrate specific facts which lead this court unerringly and unmistakably to a conclusion opposite that of the trial court. *Joseph v. State* (1985), Ind., 483 N.E.2d 32. In the instant case, Smith must first prove by a preponderance of the evidence that his counsel erroneously advised him of the sentencing range.

■ In support of his argument that he was misinformed by counsel, Smith offers only his own self-serving assertion that "Had he known that [he] could have received more than 30 years after listening to Mr. Conway," he would not have entered the guilty plea. *Record* at 213–14. Even accepting the dubious proposition that this statement is evidence that he was misinformed, the record is replete with evidence to the contrary.

Michael Conway, Smith's counsel at the guilty plea hearing, testified at the post-conviction hearing. Conway recalled that he had discussed with Smith the possible range of the sentence Smith might receive if he pled guilty:

"We then talked in terms of a plea, and while I presented to him the ranges of sentences involved, which I think was 20 to 50; we discussed also, and he asked me what I thought he might end up with, as a 'gut reaction'. And, I had told him that based upon his criminal history, and my experience, that I thought he was reasonably looking in the 20 to 30 year range; but, that final decision was the Court's, and the Court's alone. And he could receive anything from 20 to 50." *Record* at 237.

Conway's testimony refutes Smith's contention that he was not informed that a 50–year sentence was possible. Smith's claim is contradicted elsewhere in the transcript of the guilty plea hearing:

"*THE COURT*: All right, the minimum sentence is twenty (20) years, the maximum sentence is fifty (50) years, the presumptive sentence is thirty (30) years. If you have a prior criminal history, that would be one (1) of the criteria that the Court would aggravate the circumstances and make it a fifty (50) year sentence. Do you understand that?

*MR. SMITH*: Yes, sir.

*THE COURT*: Now, you're charged in two counts. Do you know what consecutive means?

*MR. SMITH*: Yes, sir, Your Honor.

*THE COURT*: All right, that means that the Court could stack one sentence on top of the other. And if it was a maximum sentence on each charge, it could be a hundred (100) years. Do you understand that?

*MR. SMITH*: Yes, sir.

*THE COURT*: Do you understand everything I've explained to you so far here today?

*MR. SMITH*: Yes, sir, Your Honor.

*THE COURT*: And you still want to plead guilty to Counts One (1) and Two (2) of the Information, both class A felonies.

*MR. SMITH:* Yes, sir, Your Honor." *Record* at 173–74.

Smith's claim of ignorance of the possibility of a 50–year sentence is further controverted by his own testimony at the post-conviction hearing:

"Q. Mr. Smith, as I understood you to say that you remembered that the Judge did tell you the range of penalties was as high as 50 years, during your Guilty Plea Hearing—.

A. —yes, sir—.

Q. —is that correct...... So, you knew that was a possibility?

A. Yeah, understanding ... I knew it was a possibility, but it was (unintelligible) to me, like going to trial or anything, you know, and, getting found guilty.

Q. I understood you to say that, in your words, "I was hoping to get less time by pleading Guilty, than by going to trial."

A. Yes, sir. Understanding that the maximum and the minimum..... The maximum being 50 years, and the minimum being 20 years on the sentences; I understood, you know, and the mitigating, you know, the presumptive being 30. I understood all.... He explained all that to me, but, I didn't know.... I didn't, you know, think, you know, by throwing myself on the mercy of the Court, I didn't really.... I really didn't understand what I was really doing when I did it, so...." *Record* at 215–16.

Smith readily admitted that he had been accurately advised of the range of years of the sentence he might receive, and that he pled guilty in hopes that the trial court would sentence him more leniently after pleading guilty than would have been the case had he proceeded to trial and been found guilty. It is apparent, therefore, that Smith's complaint amounts to little more than dissatisfaction with the measure of "mercy" doled out by the trial court. Such is not valid basis upon which to set aside a guilty plea.

Smith has failed to prove by a preponderance of the evidence that he was incorrectly advised of the sentencing range at the time he entered his guilty plea. Therefore, the post-conviction court properly denied Smith's PCR petition. *Cf. Smith v. State* (1992), Ind.App., 596 N.E.2d 257 (post-conviction relief denied to defendant who failed to sustain his burden of proof that he correctly understood the sentence called for in the plea agreement).

Judgment affirmed.

KIRSCH, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

I am unable to agree that *Short v. State* (1982) Ind., 443 N.E.2d 298, validates the purported judgment of conviction and the sentence sought to be imposed by a master commissioner. The *Short* opinion treated the matter as one of waiver, in that the defendant made no objection to the actions of the master commissioner. The court in *Short* premised its determination upon a conclusion that Short was not attacking the subject matter jurisdiction, but rather challenged the authority of the "presiding authority to so act." 443 N.E.2d at 309. Such treatment, however, in my view, failed to recognize that the doctrine of waiver is inapplicable when the purported judgment is a nullity because in contravention of the Indiana Constitution. *State ex rel. Smith v. Starke Circuit Court* (1981) 275 Ind. 483, 417 N.E.2d 1115.

In *Short,* the court specifically referred to *State ex rel. Smith, supra,* 417 N.E.2d 1115, and had a clear opportunity to overrule it but chose not to do so. Rather, the court relied solely upon *Gordy v. State* (1974), 262 Ind. 275, 315 N.E.2d 362. In doing so, it overlooked the fact that in *State ex rel. Smith, supra,* the court acknowledged the rule enunciated in *Gordy* and rejected it. However, in order not to jeopardize the myriad past actions of commissioners throughout the state, the *Smith* court decreed that the holding "shall have only prospective application, and shall apply to or affect only cases which have

not yet reached final judgment. . . ." 417 N.E.2d at 1124.[1]

The holding of our Supreme Court in *State ex rel. Smith, supra,* was and is clear. That holding is worthy of extensive quotation. Quoting from *Shoultz v. McPheeters* (1881) 79 Ind. 373, the court said:

"'Judicial acts, within the meaning of the Constitution of Indiana, are such as are performed in the exercise of judicial power. But the judicial power of this State is vested in courts. A judicial act, then, must be an act performed by a court, touching the rights of parties, or property, brought before it by voluntary appearance. . . .'"

*Id.* at 377, *quoting Flournoy v. City of Jeffersonville,* (1861) 17 Ind. 169, 173. We further described judicial acts, as distinguished from non-judicial acts, in this fashion:

"The power to hear causes and report facts or conclusions to the court for its judgment is not judicial within the meaning of the Constitution.

\*     \*     \*     \*     \*     \*

'It is the inherent authority not only to decide, but to make binding orders or judgments, which constitutes judicial power; and the instrumentalities used to inform the tribunal, whether left to its own choice or fixed by law, are merely auxiliary to that power, and operate on persons or things only through its actions, and by virtue of it.'"

*Id.* at 378, *quoting Underwood v. McDuffee,* (1867) 15 Mich. 361, 368. Clearly, in light of these principles, a master commissioner can act as an "instrumentality" to inform and assist the court by conducting hearings and reporting facts or conclusions to the court, but only the court has "the inherent authority not only to decide, but to make binding orders or judgments. . . ." *Id. See* Ind.R.Tr.P. 53. *Cf.* Ind.Code § 34-1-25-1 *et seq.* (Burns 1973), *repealed by* Acts 1969, ch. 191, § 3, p. 546.

Yet, the statute at issue in *Shoultz* unquestionably purported to confer authority on master commissioners to exercise powers which are strictly judicial in quality. Section 419 clearly stated that a master commissioner was to have

"all the power of any judge in vacation, to grant restraining orders, injunctions, writs of habeas corpus, and writs of ne exeat, and to appoint receivers, and hear and determine all motions and matters, and make all orders concerning the same."

This Court asserted:

"A master commissioner is not a court, and judicial duties which courts only can exercise, can not be conferred upon him. This seems so plain upon principle that the support of authority is not needed."

*Shoultz v. McPheeters, supra,* 79 Ind. at 376. We concluded, in light of the constitutional principles stated above, that "judicial powers can not be vested in officers, such as master commissioners, appointed by judges of the courts." *Id.* at 375. Thus, section 419, quoted above, was held to be unconstitutional in *Shoultz.*

In striking down § 419, we distinguished §§ 415 and 418, which conferred to master commissioners only non-judicial powers. The performance by a master commissioner of the types of acts found in §§ 415 and 418 does not amount to the exercise of judicial power by a body other than a constitutional court created by our legislature.

There are striking and compelling similarities between the *Shoultz* case and the case now before us. The statutes in question here, pertaining to Starke, Vanderburgh and St. Joseph Counties, attempt to confer similarly broad powers on the master commissioners of the respective circuit courts. The sections in question authorize the master commissioner, if so empowered by the circuit court judge, to, inter alia, "exercise full jurisdiction over any probate matters, civil matters, or criminal matters." Potentially, the only limitations on his power concern juvenile matters and

---

**1.** The result in *Short,* as well as in *Gordy,* was salvaged by the prospective only application of *Smith.* The judgment in *Short* was finalized in December 1980, when Short's Motion to Correct Errors was overruled. The *Smith* decision was not issued until March 23, 1981.

matters of judicial mandate. *See, e.g.,* §§ 33–4–1–74.4; 33–4–1–74.6.

Further, these statutes provide vastly greater opportunities for the master commissioner's exercise of such powers than did the statute in question in *Shoultz v. McPheeters, supra.* In *Shoultz,* the statute permitted the commissioner to exercise jurisdiction only when the regular judge was absent, incompetent, or unable to act by reason of illness. The statutes now before us, however, authorize the commissioner to perform his duties on a full-time basis; he acts independently of the regular judge, and does not depend on the regular judge's absence or inability to act for the statutorily-given authorization to perform various judicial tasks.

Therefore, on the authority of *Shoultz v. McPheeters,* we conclude that § 33–4–1–74.4(b), § 33–4–1–75.1(c), and § 33–4–1–82.2(b) are constitutionally infirm because they attempt to authorize the performance of plainly judicial acts by the master commissioner. Such judicial acts, by our well established principles, may be performed only by judges. "[J]udicial powers cannot be vested in officers, such as master commissioners, appointed by the judges of the courts." *Shoultz v. McPheeters, supra,* 79 Ind. at 375.

Also underlying our decision here are article five, section eighteen, and article seven, section one, of our Constitution. The former provision clearly states that a vacancy in the office of judge of any court is to be filled by appointment by the governor, such appointment to expire "when a successor shall have been elected and qualified." This provision applies to courts of general jurisdiction. *In re Petition for Appointment of Magistrates of Beech Grove,* (1940) 216 Ind. 417, 24 N.E.2d 773; *State ex rel. Gleason v. Gerdink,* (1909) 173 Ind. 245, 90 N.E. 70. The statutes under consideration, by their effect, create offices with virtually the same authority and powers as constitutional courts of general jurisdiction. *See* Ind. Const. art. 7, § 1; art. 5, § 18. The master commissioner of such a "court" is given virtually unlimited powers to act in a clearly judicial capacity; the statutes extend his authority as far as that

of the circuit court judge, except concerning juvenile and mandate matters. These two limitations on the commissioner's powers do not circumscribe and meaningfully limit his authority and jurisdiction to the point where we could consider his office as less than equivalent to a "constitutional court" having a "general and state character." *In re Petition for Appointment of Magistrates of Beech Grove, supra,* 216 Ind. at 425, 24 N.E.2d at 776. Further, his actions in a given case are subject to no direct control, oversight or review by the circuit judge. In spite of this grant of broad powers, a master commissioner under these statutes is neither elected by the voters nor appointed by the governor; he is appointed by the circuit court judge and serves at his pleasure.

Thus, we conclude these statutes are constitutionally deficient in this respect: they establish an office having authority virtually equivalent to that of a constitutional court of general jurisdiction. Insofar as they attempt to establish additional courts for the respective counties, the statutes reflect a proper exercise of legislative authority. Ind. Const. art. 7, § 1. *See Elkhart County Bd. Comm. v. Albright* (1907) 168 Ind. 564, 81 N.E. 578. *See also* Ind. Const. art. 7, § 8. However, the *judge* of such a "court," which, by virtue of the powers given to them by the statutes, is what the master commissioner would be, must be elected by the voters or, if a vacancy occurs in that office, appointed by the governor. Our constitution clearly reflects the intent to maintain as elected officers the judges of courts having general jurisdiction. Ind. Const. art. 2 § 14; art. 5, § 18; art. 7, § 7; *In re Petition for Appointment of Magistrates of Beech Grove, supra; State ex rel. Gleason v. Gerdink, supra; Shoultz v. McPheeters, supra.*

Stated conversely, the appointment of a master commissioner by a circuit court judge is not necessarily constitutionally improper. However, a commissioner who is selected in this manner must have substantially fewer powers and duties than those granted by the statutes in question. Un-

der the constitutional principles outlined above, an appointed officer of this type must have significantly limited jurisdiction, or his authority must be confined to the performance of non-judicial acts. *In re Petition for Appointment of Magistrates of Beech Grove, supra; State ex rel. Gleason v. Gerdink, supra; Shoultz v. McPheeters, supra.* See Ind.R.Tr.P. 53; Ind. Code § 34–1–25–1 *et seq.* (Burns 1973) *cited with approval in Shoultz v. McPheeters, supra, repealed by* Acts 1969, ch. 191, § 3, p. 546. The statutes in question clearly attempt to grant judicial powers and authority beyond such constitutional limitations. Therefore, we declare the following sections unconstitutional: Ind. Code §§ 33–4–1–74.4(b); 33–4–1–82.2(b); and 33–4–1–75.1(c) (Burns Supp.1980).

417 N.E.2d at 1121–23 (footnote omitted).[2]

Because no valid final judgment has been entered in this case, we are compelled to dismiss the appeal as premature. *Rivera v. State* (1992) 2d Dist.Ind.App., 601 N.E.2d 445. *See McMichel v. State* (1994) 5th Dist. Ind.App., 641 N.E.2d 1047. I would do so.

**2.** In light of the constitutional holding of *State ex rel. Smith, supra,* it is doubtful whether the recently enacted amendments to I.C. 33–4–7–4 and 33–4–7–8 (West's Ann Code.1994 Supp.) will pass muster. While it is commonly acknowledged that trial courts require manpower and technical assistance to deal with growing caseloads, we are not at liberty to overrule the binding precedent set forth by our Supreme Court. That court is at liberty to revisit the issues treated in *State ex rel. Smith* or perhaps reach some resolution in another fashion. Until it has done so, however, it is inappropriate for this intermediate court to exhibit such effrontery as to usurp that exclusive prerogative.